**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
)
)
Rodney Lail, et al., )
)
Plaintiffs, )
)  **C.A.  No. 10-CV-210-PLF**
v. )
)
United States Government, et al., )
)
)
Defendants. )
)
)
_____)

**MOTION OF *PRO SE* PLAINTIFFS FOR A STAY OF TIME TO FILE A RESPONSE TO DEFENDANDS' MOTIONS TO DISMISS, DOCUMENT NUMBER 19 AND DOCUMENT NUMBER 24 UNTIL COURT DECIDES PENDING ISSUES**

Pursuant to Local Rules LCv7(m), *Pro Se* Plaintiffs attempted to gain consent for expansion of time from Counsels for the Defendants through both telephone calls and e-mail. Defendants' Counsel Oliver Garcia was unavailable by telephone and has not responded by e-mail. Defendants' Counsel Monte Fried stated on the telephone he was not comfortable dealing with *Pro Se* litigants and when he made a decision as to the request for extension of time, at some undefined date, he would be back in touch by e-mail, but in any event in the interim he was going out of town.

## BACKGROUND AND DISCUSSION

While the *Pro Se* Plaintiffs Motion, Document No. 10 filed on June 30, 2010, is pending before the Court, Defendants including the State of South Carolina and other state and local governmental entities, Palmetto Health and their personnel named as Defendants are using the same legal counsels in this litigation seeking a dismissal (See Document No. 19).  Setting aside for the moment the argument that state funds are being used to represent a private entity that itself generates over a billion dollars of revenue annually, in a conspiracy lawsuit, the potential conflict of interest itself between the public and private entities represented by a common counsel is a determent to the Plaintiffs.  Significantly, this common legal representation raises the public questions of misuse of government resources and the public perception of why governmental entities would have common interests with private players in a racketeering lawsuit.

The decision of this Court regarding the Plaintiffs Motion as contained in Document 10 in any event will lead to irreversible legal tactical decisions by the Plaintiffs.  In a related matter, the United States Supreme Court ruled:

> "The Government with its greater resources and expertise can in effect coerce compliance with its position. Where compliance is coerced, precedent may be established on the basis of an uncontested order rather than the thoughtful presentation and consideration of opposing views. In fact, there is evidence that small businesses are the target of agency action precisely because they do not have the resources to fully litigate the issue. This kind of truncated justice undermines the integrity of the decision-making process.
>
> "The exception created by [the EAJA] focuses primarily on those individuals for whom cost may be a deterrent to vindicating their rights. The bill rests on the premise that a party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy. An adjudication or civil action provides a concrete, adversarial test of Government regulation and thereby insures the legitimacy and fairness of the law. An adjudication, for example, may show that the policy or factual foundation underlying an agency rule is erroneous or inaccurate, or it may provide a vehicle for

developing or announcing more precise rules. . . . Where parties are serving a public purpose, it is unfair to ask them to finance through their tax dollars unreasonable Government action and also bear the costs of vindicating their rights." Id., at 10. Comm'r v. Jean, 496 U.S. 154, 165 (U.S. 1990)

    In this case the Defendant State of South Carolina has maliciously and wrongfully abducted without due process 93 year old Plaintiff Doris Holt almost immediately after the filing of the required tort notice notifying the State of South Carolina they were to be named in a tort action.  On January 4, 2010, Plaintiff Doris Holt disappeared completely and has been kept in isolation, if she is still alive, in an attempt to stop the filing of this lawsuit. The legal action in family court regarding Plaintiff Doris Holt ended on March 22, 2010.  Her son, Plaintiff James Spencer, was an Intervenor in that case after the SC State Agency admitted on the Family Court record their allegations against Spencer were unfounded as there was in fact no evidence of physical abuse by Plaintiff Spencer.  SC DSS's original allegation (not a charge) was the basis for Spencer's removal as Plaintiff Doris Holt's self appointed durable power of attorney and power health care attorney. According to South Carolina Rules of Civil procedure, an Order is to be executed within thirty (30) days of the hearing (**See Attachment "A"**). To date despite repeated requests by the Intervenor, her son Plaintiff James Spencer, the South Carolina Family Court has not issued an Order which prevents an appeal, but it is now Plaintiff Spencer's position since the verbal order was issued in Court he has in fact been reinstated as his mother's duly appointed durable  power of attorney and power of health care attorney..

    In this regard, please note Defendant UniHealth and Brenda Hughes in Document No. 24 are attempting to use the question of the rightful use of Doris Holt's Power of Attorney to question the legitimacy of Doris Holt being a Plaintiff despite the fact this

Court has recently "*Sua Sponte*" added Doris Holt as a Plaintiff in this proceeding. Subsequently this apparent confusion leads to difficulty for Plaintiffs addressing issues raised in Document 19 and Document 24 by the Defendants.

Additionally, Defendants in Document 24 interchange the name of Plaintiff Spencer and Defendant Stewart to the point that Document 24 cannot be properly addressed by Plaintiffs as it is confusing, inconsistent and inaccurate.

## RELIEF SOUGHT

*Pro Se* Plaintiffs respectfully pray the Court to rule in the interests of justice and as requested by Plaintiffs in Document 10 and herein to:

1. Grant *Pro Se* Plaintiffs request for appointment of competent *Pro Bono* Counsel to represent *Pro Se* Plaintiffs in this litigation.

2. Order immediate access to Plaintiff Doris Holt to determine her medical condition and allow unfettered access of independent medical personnel to her and her medical records, and access to her family, friends and legal counsel in accordance with the State laws of South Carolina. (**See Attachment "B"**)

3. Review the Conflict of Interests and propriety of representation by the same counsel in these matters as outlined herein above and if found to take such action as the Court deems appropriate.

4. Order the Defendants to redraft Document No. 24 into an understandable format using the correct names, dates and facts.

5. Grant Plaintiffs a stay to respond to Defendant Document 19 and Document 24 until 14 days after the Court rules on Plaintiffs Document No. 10 and the

matters raised herein and/or grant such additional time to allow preparation of *Pro Bono* Counsel if such is appointed by the Court.

## ADDITIONAL CONSIDERATIONS

Granting this stay or expansion of time would not affect any other deadlines as no discovery plan or order has been filed in this matter. This motion for stay or expansion of time is filed before the time for Plaintiffs response to Defendants Document Number 19 and Document Number 24 has expired and this Court has not previously extended this deadline.

This the 5th day of August, 2010.

Respectfully submitted by,

Doris Holt, *Pro Se*
Suite 183
7001 Saint Andrews Rd.
Columbia, SC, 29212

James B. Spencer
Suite 183
7001 Saint Andrews Rd.
Columbia, SC 29212

*[signature]*
Rodney K. Lail, Plaintiff, *Pro Se*
608 18th Avenue North
Myrtle Beach, SC 29577
(843) 626-3229

*[signature]*
Irene Santacroce, Plaintiff, *Pro Se*
205 Deer Trace Circle
Myrtle Beach, SC 29588
(843) 455-0891

*[signature]*
Ricky Stephens, Plaintiff, *Pro Se*
207 Deer Trace Circle
Myrtle Beach, SC 29588
(843) 283-6751

*[signature]*
Marguerite Stephens, Plaintiff, *Pro Se*
207 Deer Trace Circle
Myrtle Beach, SC 29588
(843) 283-6751

*[signature]*
Bruce Benson, Plaintiff, *Pro Se*
848 N, Rainbow BL., Suite 491
Las Vegas, Nevada 89107-1103
(702) 524-9006

*[signature]*
Dan Green, Plaintiff, *Pro Se*
848 North Rainbow Blvd., Suite 170
Las Vegas, Nevada 89107
(310) 337-2820

*[signature]*
Nicholas C. Williamson, Plaintiff, *Pro Se*
8005 White Ash Court
Oak Ridge, North Carolina 27310
(336) 210-0672

*[signature]*
Virginia Williamson, Plaintiff, *Pro Se*
8005 White Ash Court
Oak Ridge, North Carolina 27310
(336) 210-0672

## CERTIFICATE OF SERVICE

I hereby certify that on the 5TH day of August, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Monte Fried, Esq.
WRIGHT, CONSTABLE & SKEEN, L.L.P.
100 North Charles Street
Suite 1600
Baltimore, MD 21202-3805
Email: mfried@wcslaw.com

Oliver Garcia (D.C. Bar No. 456600)
901 F Street, N.W., Suite 500
Washington, D.C. 20004
Tel: (202) 737-3500
Fax: (202) 737-3330
email: ogarcia@aegislawgroup.com

by: /s/ James Spencer
James Spencer
Suite 183
7001 Saint Andrews Road
Columbia, SC 29212
e-mail: JamesBSpencer@sc.rr.com
803-414-0889

**ATTACHMENT "A"**



1 of 1 DOCUMENT

CODE OF LAWS OF SOUTH CAROLINA ANNOTATED
Copyright (c) 2009, The State of South Carolina

*** This document reflects changes received through October 15, 2009 ***

SOUTH CAROLINA RULES OF FAMILY COURT
III. PROVISIONS APPLICABLE TO DOMESTIC RELATIONS ACTIONS

*Rule 26, SCRFC* (2009)

Review Court Orders which may amend this Rule.

RULE 26. ORDERS

  (a) Findings of Fact. An order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the court's decision.

    (b) Certification. By signing his name to an order in a domestic relations case, the judge certifies compliance with this rule.

    (c) Time for Issuing. Except under exceptional circumstances, an order in a domestic relations case shall be issued as soon as possible after the hearing, but not later than 30 days thereafter.

S.C. Code of Laws Title 44 Chapter 81 Bill Of Rights For Residents Of Long-term Care Facilities - www.scstatehouse.gov-LPITS

Case 1:10-cv-00210-PLF   Document 30   Filed 08/05/10   Page 9 of 11

Welcome to the South Carolina Legislature Online

| HOME | HOUSE | SENATE | CURRENT LEGISLATION | RESEARCH | PUBLICATIONS | CITIZENS' INTEREST | ARCHIVES |

- What's New?

**Quick Links**
- Quick Search

**Legislative Resources**
- Purchase Legislative Manuals Online
- Find Your Legislator
- Bill Tracking & Reports
- Multi-Criteria Search
- View Legislative Manual
- Handheld Devices
- Wireless Network
- Student Connection
- Remote Staff Services

**SC Code of Laws**
- Search Full Text
- Title/Chapter List

**SC Code of Regulations**
- Search Full Text
- Chapter List

**SC Constitution**
- Search Full Text
- Article List

**ATTACHMENT "B"**

Home > Code of Laws Title/Chapter List > Title 44

**South Carolina Code of Laws**
**(Unannotated)**
**Current through the end of the 2009 Session**

DISCLAIMER

The South Carolina Legislative Council is offering access to the unannotated South Carolina Code of Laws on the Internet as a service to the public. The unannotated South Carolina Code on the General Assembly's website is now current through the 2009 session. The unannotated South Carolina Code, consisting only of Code text and numbering, may be copied from this website at the reader's expense and effort without need for permission.

The Legislative Council is unable to assist users of this service with legal questions. Also, legislative staff cannot respond to requests for legal advice or the application of the law to specific facts. Therefore, to understand and protect your legal rights, you should consult your own private lawyer regarding all legal questions.

While every effort was made to ensure the accuracy and completeness of the unannotated South Carolina Code available on the South Carolina General Assembly's website, the unannotated South Carolina Code is not official, and the state agencies preparing this website and the General Assembly are not responsible for any errors or omissions which may occur in these files. Only the current published volumes of the South Carolina Code of Laws Annotated and any pertinent acts and joint resolutions contain the official version.

Please note that the Legislative Council is not able to respond to individual inquiries regarding research or the features, format, or use of this website. However, you may notify Legislative Printing, Information and Technology Systems at LPITS@scstatehouse.gov regarding any apparent errors or omissions in content of Code sections on this website, in which case LPITS will relay the information to appropriate staff members of the South Carolina Legislative Council for investigation.

**Title 44 - Health**

CHAPTER 81.

BILL OF RIGHTS FOR RESIDENTS OF LONG-TERM CARE FACILITIES

**SECTION 44-81-10.** Short title.

This act may be cited as the "Bill of Rights for Residents of Long-Term Care Facilities".

**SECTION 44-81-20.** Legislative findings.

The General Assembly finds that persons residing within long-term care facilities are isolated from the community and often lack the means to assert their rights fully as individual citizens. The General Assembly recognizes the need for these persons to live within the least restrictive environment possible in order to retain their individuality and personal freedom. The General Assembly further finds that it is necessary to preserve the dignity and personal integrity of residents of long-term care facilities through the recognition and declaration of rights safeguarding against encroachments upon each resident's need for self-determination.

**SECTION 44-81-30.** Definitions.

As used in this chapter:

(1) "Long-term care facility" means an intermediate care facility, nursing care facility, or residential care facility subject to regulation and licensure by the State Department of

S.C. Code of Laws Title 44 Chapter 81 Bill Of Rights For Residents Of Long-term Care Facilities - www.scstatehouse.gov-LPITS

Case 1:10-cv-00210-PLF   Document 30   Filed 08/05/10   Page 10 of 11

Health and Environmental Control (department).

(2) "Resident" means a person who is receiving treatment or care in a long-term care facility.

(3) "Representative" means a resident's legal guardian, committee, or next of kin or other person acting as agent of a resident who does not have a legally appointed guardian.

**SECTION 44-81-40.** Rights of residents; written and oral explanation required.

(A) Each resident or the resident's representative must be given by the facility a written and oral explanation of the rights, grievance procedures, and enforcement provisions of this chapter before or at the time of admission to a long-term care facility. Written acknowledgment of the receipt of the explanation by the resident or the resident's representative must be made a part of the resident's file. Each facility must have posted written notices of the residents' rights in conspicuous locations in the facility. The written notices must be approved by the department. The notices must be in a type and a format which is easily readable by residents and must describe residents' rights, grievance procedures, and the enforcement provisions provided by this chapter.

(B) Each resident and the resident's representative must be informed in writing, before or at the time of admission, of:

(1) available services and of related charges, including all charges not covered under federal or state programs, by other third party payers, or by the facility's basic per diem rate;

(2) the facility's refund policy which must be adopted by each facility and which must be based upon the actual number of days a resident was in the facility and any reasonable number of bed-hold days.

Each resident and the resident's representative must be informed in writing of any subsequent change in services, charges, or refund policy.

(C) Each resident or the resident's legal guardian has the right to:

(1) choose a personal attending physician;

(2) participate in planning care and treatment or changes in care and treatment;

(3) be fully informed in advance about changes in care and treatment that may affect the resident's well-being;

(4) receive from the resident's physician a complete and current description of the resident's diagnosis and prognosis in terms that the resident is able to understand;

(5) refuse to participate in experimental research.

(D) A resident may be transferred or discharged only for medical reasons, for the welfare of the resident or for the welfare of other residents of the facility, or for nonpayment and must be given written notice of not less than thirty days, except that when the health, safety, or welfare of other residents of the facility would be endangered by the thirty-day notice requirement, the time for giving notice must be that which is practicable under the circumstances. Each resident must be given written notice before the resident's room or roommate in the facility is changed.

(E) Each resident or the resident's representative may manage the resident's personal finances unless the facility has been delegated in writing to carry out this responsibility, in which case the resident must be given a quarterly report of the resident's account.

(F) Each resident must be free from mental and physical abuse and free from chemical and physical restraints except those restraints ordered by a physician.

(G) Each resident must be assured security in storing personal possessions and confidential treatment of the resident's personal and medical records and may approve or refuse their release to any individual outside the facility, except in the case of a transfer to another health care institution or as required by law or a third party payment contract.

(H) Each resident must be treated with respect and dignity and assured privacy during treatment and when receiving personal care.

(I) Each resident must be assured that no resident will be required to perform services for

S.C. Code of Laws Title 44 Chapter 81 Bill Of Rights For Residents Of Long-term Care Facilities - www.scstatehouse.gov-LPITS

Case 1:10-cv-00210-PLF   Document 30   Filed 08/05/10   Page 11 of 11

the facility that are not for therapeutic purposes as identified in the plan of care for the resident.

(J) The legal guardian, family members, and other relatives of each resident must be allowed immediate access to that resident, subject to the resident's right to deny access or withdraw consent to access at any time. Each resident without unreasonable delay or restrictions must be allowed to associate and communicate privately with persons of the resident's choice and must be assured freedom and privacy in sending and receiving mail. The legal guardian, family members, and other relatives of each resident must be allowed to meet in the facility with the legal guardian, family members, and other relatives of other residents to discuss matters related to the facility, so long as the meeting does not disrupt resident care or safety.

(K) Each resident may meet with and participate in activities of social, religious, and community groups at the resident's discretion unless medically contraindicated by written medical order.

(L) Each resident must be able to keep and use personal clothing and possessions as space permits unless it infringes on another resident's rights.

(M) Each resident must be assured privacy for visits of a conjugal nature.

(N) Married residents must be permitted to share a room unless medically contraindicated by the attending physician in the medical record.

(O) A resident or a resident's legal representative may contract with a person not associated with or employed by the facility to perform sitter services unless the services are prohibited from being performed by a private contractor by state or federal law or by the written contract between the facility and the resident. The person, being a private contractor, is required to abide by and follow the policies and procedures of the facility as they pertain to sitters and volunteers. The person must be selected from an approved list or agency and approved by the facility. All residents or residents' legal representatives employing a private contractor must agree in writing to hold the facility harmless from any liability.

**SECTION 44-81-50.** Discrimination.

Each resident must be offered treatment without discrimination as to sex, race, color, religion, national origin, or source of payment.

**SECTION 44-81-60.** Grievance procedures; review by department.

Each facility shall establish grievance procedures to be exercised by or on behalf of the resident to enforce the rights provided by this act. The department shall review and approve these grievance procedures annually. This act is enforced by the department. The department may promulgate regulations to carry out the provisions of this act.

**SECTION 44-81-70.** Retaliation.

No facility by or through its owner, administrator, or operator, or any person subject to the supervision, direction, or control of the owner, administrator, or operator shall retaliate against a resident after the resident or the resident's legal representative has engaged in exercising rights under this act by increasing charges, decreasing services, rights, or privileges, or by taking any action to coerce or compel the resident to leave the facility or by abusing or embarrassing or threatening any resident in any manner.

**Website Policies** | **Accessibility** | **Contact Us**