# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

)
)
Rodney Lail, et al.,                    )
)
      Plaintiffs,                 )
)    **C.A.  No. 10-CV-210-PLF**
        v.                        )
)
United States Government, et al.,        )
)
)
      Defendants.                 )
)
)
_____)

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS (DOCUMENT 19)

*Pro Se* Plaintiffs in the above captioned case hereby file their brief in

Opposition to the following Defendants' Motion to Dismiss: Palmetto Health Care;

Suzanne Tillman, Individually and in her official capacity as Director with

Palmetto Senior Care; Jennifer Brewton, Individually and in her official capacity

with Palmetto Senior Care; Kathy Beers, Individually and in her official capacity

as Administrator with Palmetto Senior, Care, the preceding as a group herein know

as the "The Palmetto Health Defendants"; The State of South Carolina; The State

of South Carolina Law Enforcement Division; Captain David Caldwell, Individually and in his official capacity with SLED; Captain Larry Gainey, Individually and in his official capacity with SLED; Mark Keel, Individually and in his official capacity with SLED; Mike Prodan, Individually and in his official capacity with SLED; The South Carolina Department of Social Services; Princess Hodges, Individually and in her official capacity with DSS; Susan Stroman, Individually and in her official capacity with DSS, as a separate group herein after identified as  "The South Carolina State Defendants"; John Weaver, Individually and in his official capacity as the Horry County Attorney; Horry County Police Chief, John Morgan, Individually and in his official capacity with Horry County and Horry County; this last group known collectively hereinafter as " The Horry County Defendants."

When *Pro Se* Plaintiffs refer to all Defendants in all subgroups listed above hereinafter within this document they will be referred to as "The Defendants."

The motion to dismiss (Doc. No. 19) must be denied as (1) this Court has personal jurisdiction over "The Defendants", and (2) the venue is proper in this Court, as set forth herein below in detail.

## I. <u>Statement of Facts.</u>

"The Defendants" Motion to Dismiss (Document No. 19) is being submitted by a grouping of diverse Defendants who individually would normally have a

conflict of interest with each other.  The numerous Defendants by responding and being represented through the same counsel(s) show common interests, which the *Pro Se* Plaintiffs point out to the Court demonstrates the common interests "The Defendants" have that resulted in the torts cited in the causes of action and conspiracy as contained in the *Pro Se* Plaintiffs' Complaint, that is under litigation in this case.

*Pro Se* Plaintiffs' concerns are also raised in the District of Columbia Bar Rules concerning a Conflict of Interest.  Rule 1.7 states:

"a) A lawyer shall not advance two or more adverse positions in the same matter.
(b) Except as permitted by paragraph (c) below, a lawyer shall not represent a client with respect to a matter if:
    (1) That matter involves a specific party or parties, and a position to be taken by that client in that matter is adverse to a position taken or to be taken by another client in the same matter, even though that client is unrepresented or represented by a different lawyer;
    (2) Such representation will be or is likely to be adversely affected by representation of another client;
    (3) Representation of another client will be or is likely to be adversely affected by such representation; or
    (4) The lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property, or personal interests.
(c) A lawyer may represent a client with respect to a matter in the circumstances described in paragraph (b) above if:
    (1) Each potentially affected client provides informed consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation; and
    (2) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client.

(d) If a conflict not reasonably foreseeable at the outset of a representation arises under paragraph (b)(1) after the representation commences, and is not waived under paragraph (c), a lawyer need not withdraw from any representation unless the conflict also arises under paragraph (b)(2), (b)(3), or (b)(4)."

The *Pro Se* Plaintiffs have alleged that *Pro Se* Plaintiff 93 year old Doris Holt was and is a victim of retaliation for the filing of Federal and State tort claims related to the case captioned above before this Court, and she is wrongfully being held in captivity for use as a living pawn by Defendants in this matter to interfere as the *Pro Se* Plaintiffs try to lawfully litigate the claims before this Court.  (See *Pro Se* Plaintiffs Complaint, Document No. 12, ¶¶ 145 – 217.)

The *Pro Se* Plaintiffs point out the use of makeup to fake injuries to *Pro Se* Plaintiff Doris Holt. (Doc. No. 12, ¶ 161.)  *Pro Se* Plaintiffs find it hard to believe that when the evidence is presented to the Court and found to be unequivocally true that there will not be a conflict of interest among "The Defendants" that will create litigation problems.  These litigation problems will be adverse to the *Pro Se* Plaintiffs as there will be delays and infighting, new counsel will need to be obtained and there undoubtedly will be motions for a new trial.  In the interests of judicial economy the *Pro Se* Plaintiffs request the Court to assure that full disclosure of potential conflicts have been discussed among the parties and that waivers are properly executed by "The Defendants" to ensure that the *Pro Se*

Plaintiffs are not impacted by these conflicts when as inevitable in these matters the conflicts are realized.

The *Pro Se* Plaintiffs have previously brought the issue of a conflict of interest before the Court and, regarding "The Defendants" (See Document No. 30 Pg. 2, Pg. 4, Point No. 3).  The Court remains silent on this issue of concern raised by the *Pro Se* Plaintiffs and, notwithstanding this, the *Pro Se* Plaintiffs are submitting this memorandum in opposition to "The Defendants" Motion to Dismiss (Doc. No. 19).

However, the *Pro Se* Plaintiffs hereby respectfully provide Judicial Notice of such potential conflicts of interests that can impact the ability for the *Pro Se* Plaintiffs to litigate this case and that such a conflict of interest can lead to a retrial, which in either case would be prejudice to the interests of the *Pro Se* Plaintiffs.

"The Defendants" in Document No. 19 introduce information to confuse the Court that is not germane to the causes of action listed in the Complaint being litigated in this Court.  As an example in Document 19-1, Pg 2 ¶ 2 "The Defendants" state, "The identity of the persons making the threats is not given in the Complaint, nor is the reason that these threats were being made."  This is nothing but *Pro Se* Plaintiff background information being twisted by "The Defendants" to confuse this Court and is not germane to the causes of action or the named Defendants in the *Pro Se* Plaintiffs' Complaint in the above captioned case.

Further, "The Defendants" baselessly attempt to present this lawsuit as previously litigated.  "The Defendants" cannot legitimately present any evidence of such that cannot be unequivocally proved to be a total distortion.  These distortions are nothing but tactics to confuse this Court rather than to deal with the substantive issues of the case captioned above that are of great concern to the National public interest in regard to reliance on Constitutional safe guards that failed to work, as will be definitively documented in this case by the *Pro Se* Plaintiffs. "The Defendants" convoluted and inaccurate "Statement of Facts" is so distorted and deceptive that the *Pro Se* Plaintiffs can only effectively characterize "The Defendants" entire "Statement of Facts" in Document No. 19-1 as a concoction of half truths, untruths, distortions and exaggerations that in no way represent truth.

The *Pro Se* Plaintiffs response to the "The Defendants" Statement of Facts in Document No. 19-1 is that the *Pro Se* Plaintiffs stand by their second amended complaint and restate such in its entirety.  The alternative would be for the *Pro Se* Plaintiffs to rewrite the Complaint, Document No. 12 in its entirety and insert it within this Memorandum in Opposition to "The Defendants" Motion to Dismiss Document No. 19.

## II.  **Based on the Documented Facts the Court Must Accept Plaintiffs' Allegations in the Complaint as Plausible on its face.**

Contrary to "The Defendants" arguments in their motion to dismiss (Doc. 19) the *Pro Se* Plaintiffs presented significant factual matter, which accepted as

true, makes their Complaint and causes of action undeniably plausible on its face.

It would be highly contradictory to the laws of probability that such factual matter presented by the *Pro Se* Plaintiffs, accepted as true, could concern unrelated events.   Given such, the contents of the *Pro Se* Plaintiffs' complaint must be viewed as plausible on its face.

In Ashcroft v. Iqbal the Supreme Court found that "[t]o survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (U.S. 2009).

See also, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S. Ct. 1160, 122 L.ED.2d 517 (1993); United States v. Gaubert, 499 U.S. 315, 327, 111 S. Ct. 1267, 1276, 113 L.Ed.2d 335 (1991).

The average individual reviewing the facts presented by the *Pro Se* Plaintiffs in their Complaint (Doc. No. 12) would easily conclude that the allegations in the Complaint were plausible and, indeed, well-founded on their face.

The *Pro Se* Plaintiffs' Complaint more than meets the standard set forth in Ashcroft v. Iqbal.

As just one example, the *Pro Se* Plaintiffs clearly document the fabrication of reports that resulted in the financial benefits that co-Defendant Palmetto Health

received by having co-Defendant SC DSS wrongfully withdraw *Pro Se* Plaintiff Doris Holt from comprehensive medical coverage contracted by her with Defendant Palmetto Health.  This wrongful action resulting in putting an additional burden on the Federal Treasury in Washington, DC to pay additional monies and/or have *Pro Se* Plaintiff Doris Holt deprived of the benefits of her contracted for health care coverage (e. g. special care, special food, dentures). (See *Pro Se* Plaintiffs Second Amended Complaint, ¶¶ 200 – 217).

Discovery is needed to determine who the financial beneficiaries were of the tort actions involved and who were the financial losers and the extent of participation of "The Palmetto Health Defendants" and "The State of South Carolina Defendants" in this act within the conspiracy and their knowledge of the overall conspiracy including interactions with "The Horry County Defendants" and the other Defendants indentified in the Complaint by the *Pro Se* Plaintiffs. The actions in the use of *Pro Se* Plaintiff Doris Holt as a human pawn by the Defendants to impact the *Pro Se* Plaintiffs litigation in this case are just an example of many wrongful acts that warrant discovery.

## III. <u>This Court Has Personal Jurisdiction Over "The Defendants".</u>

The Washington, D.C. Circuit Court made the criteria clear to establish personal jurisdiction in a civil conspiracy in <u>Manook v. Research Triangle Institute International</u> where the court established:

> "For conspiracy jurisdiction within the District of Columbia, the plaintiff must allege: (1) the existence of a civil conspiracy; (2) the Defendant's participation in the conspiracy; and (3) an overt act by a coconspirator within the forum, subject to the long-arm statute, and in furtherance of the conspiracy.  More importantly, a plaintiff seeking to meet its burden of demonstrating that a court may exercise jurisdiction over foreign Defendants under a conspiracy theory must present a particularized pleading of the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy."

Estate of Manook v. Research Triangle Inst. Int'l, 693 F.Supp. 2d 4, 18-19 (D.D.C. 2010).

The Complaint states in detail several of the actions taken in Washington, D.C., which Plaintiffs contend was the hub of the conspiracy with the FBI Washington, D.C., headquarters at the vortex of the conspiracy.  These actions include, but are not limited to, the FBI's submission of fraudulent NCIC reports to the United States Senate Judiciary Committee.  (See Complaint ¶ ¶ 117-120.)  A second example of the numerous acts conducted within the forum was the use of FBI personnel in Washington, D.C., wrongly invoking national security to hide incriminating documents to subvert the constitutional rights of the *Pro Se* Plaintiffs.  (See Complaint ¶ ¶ 123, 140, and 236.)

Additionally, all records of the actions taken by the central perpetrators and the agents and/or employees of the FBI are kept in Washington, DC, and such records were wrongfully withheld from *Pro Se* Plaintiffs by the actions of the FBI in Washington, D.C.

The Complaint makes clear the existence of a civil conspiracy and "The Defendants" participation in said conspiracy.  As stated beginning in ¶ 186 of the Complaint, "The Defendants" known roles in the conspiracy are outlined.   In complicity with the Defendant South Carolina Department of Social Services, "The Palmetto Health Defendants" have ensured the deterioration of *Pro Se* Plaintiff Doris Holt's health through their provision of substandard healthcare services using the life of the frail 93 year old *Pro Se* Plaintiff Doris Holt as a human pawn.

Defendant Palmetto Health Care and the Palmetto Senior Care Defendants (Suzanne Tillman, Jennifer Brewton, and Kathy Beers) are alleged to be involved in the fraudulent representations made to police and Family Court, which led to the unwarranted abduction and continuing detention of *Pro Se* Plaintiff Doris Holt. (See Complaint ¶¶ 150, 153, 161.)   Furthermore, Palmetto Senior Care in conjunction with the conspiracy failed to provide adequate care under its policy agreement with Doris Holt (See Complaint ¶¶ 194, 195.)

*Pro Se* Plaintiff Doris Holt's living conditions have been unsanitary; she has been nourished improperly, and has suffered uninvestigated abuse.   (See Complaint ¶¶ 194-195, 201-207.)   "The Palmetto Health Defendants" and "The State of South Carolina Defendants" have actively infringed on *Pro Se* Plaintiff Doris Holt's right to have family visitation (See Complaint ¶¶ 211-212.)  The *Pro Se* Plaintiffs have alleged in their Complaint (Doc. No. 12) that "The Defendants",

as well as other residents of South Carolina, Virginia, West Virginia, North Carolina and Washington, DC engaged in a civil conspiracy to deprive *Pro Se* Plaintiffs of their constitutional rights including, but not limited to, equal protection under law and the right to due process.

The State of South Carolina, the South Carolina Law Enforcement Division and related Defendants (David Caldwell, Larry Gainey, Mark Keel, and Mike Prodan) have been complicit with the FBI, headquarters in Washington, D.C., in covering-up civil rights abuses and defrauding the Court (See Complaint ¶¶ 92-126.)

The South Carolina Department of Social Services (DSS), Susan Stroman, and Princess Hodges are all parties to the conspiracy (See Complaint ¶¶ 145-217), beginning with DSS's and Stroman's participation in orchestrating Doris Holt's abduction.  (See Complaint ¶ 150.)  Defendant Stroman fabricated reports of abuse to wrongfully justify Defendant SC DSS's actions in this case.  (See Complaint ¶ 154.)  Defendants' SC DSS, Stroman and Hodges were unresponsive to evidence of Doris Holt's abuse allowing the frail *Pro Se* Plaintiff to be used as a human pawn by the Defendants named in the Complaint.  (See Complaint ¶ 191.)

John Weaver hid public documents to the detriment of *Pro Se* Plaintiffs' claims in furtherance of the cover up of civil rights abuses and the related

conspiracy.  (See Complaint ¶ 90.)  John Morgan further assisted Weaver in the illicit concealment and destruction of evidence.  (See Complaint ¶ 91.)

The *Pro Se* Plaintiffs have alleged the existence of the conspiracy and "The Defendants" participation in that conspiracy, therefore, prongs one and two of the Manook test are satisfied and the *Pro Se* Plaintiffs' claims are plausible on their face.

Under D.C. Code § 13-423, the long arm statute applies to members of the conspiracy outside the forum including when any of these occur:

(1)    "transacting any business in the District of Columbia,
(2)    causing tortious injury in the District of Columbia by an act omission in the District of Columbia, and
(3)    causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."

"The State of South Carolina Defendants" transact business within the District of Columbia through the United States Treasury funding of various law enforcement programs, health care programs and social service funding, "The Palmetto Health Defendants" are also recipients of funds from the United States Treasury in the form of medical grants, Medicaid and Medicare payments along with guidelines and standards set by Medicaid and Medicare, located in Washington, D.C. and the related lobbying activities conducted by Defendant Palmetto Health in these regards are conducted in Washington, D.C.

Additionally, "The Horry County Defendants" receive and handle Federal law enforcement grants, municipality grants for roadway improvements, airport development, social services housing and maintain business ties to the Washington, D.C., community to facilitate obtaining such funding.

Additionally, the Defendant FBI personnel ultimately report to FBI Headquarters in Washington, DC, and all records of the actions taken by the central perpetrators and the agents' and/or employees of the FBI are kept in Washington, DC.  Many such records were wrongfully concealed from *Pro Se* Plaintiffs by the actions of the Defendant FBI in Washington, D.C.

As outlined herein, and further in the *Pro Se* Plaintiffs' Complaint in addition to the tort actions which led to injury, which occurred inside the forum, substantial business related financial transactions and regulatory guidelines have been issued and both have and are occurring between the United States Treasury Department and other government regulatory agencies located in Washington, DC, and "The Defendants".

As previously stated Medicare and Medicaid payments and related administrative regulations from Medicare and Medicaid both headquartered in Washington, DC impact the business, financial and administrative practices of the SC DSS Defendants and "The Palmetto Health Defendants."  In that regard, "The Defendants" engage lobbyists in Washington, DC to transact business there.  There

should be no question as to the business and financial ties between "The Defendants" and forum of Washington, DC.

As coconspirators, "The Defendants" may be held responsible for all of the actions of the conspiracy.  Therefore, the third prong of the <u>Manook</u> test is satisfied and the D.C. long arm statute applies to "The Defendants."

These allegations are sufficient to confer on this Court personal jurisdiction over "The Defendants" in these plausible claims.

Based on United States Supreme Court decision in <u>Blumenthal v. United States</u>, it would be premature to have "The Defendants" dismissed from this lawsuit until discovery is conducted to determine the extent of "The Defendants" role in and knowledge of the overall conspiracy including, but not limited to, the outrageous mistreatment of the frail 93 year old *Pro Se* Plaintiff Doris Holt used as a human pawn by the Defendants and the knowledge of "The Defendants" regarding their role in such and the overall plausible conspiracy.

In <u>Blumenthal v. United States,</u> the Supreme Court found:

> "…the law rightly gives room for allowing the conviction of those discovered upon showing sufficiently the essential nature of the plan and their connections with it, without requiring evidence of knowledge of all its details or of the participation of others. Otherwise the difficulties, not only of discovery, but of certainty in proof and of correlating proof with pleading would become insuperable, and conspirators would go free by their very ingenuity."
> <u>Blumenthal v. United States, 332 U.S. 539, 557 (U.S. 1947)</u>

It is premature to have "The Defendants" dismissed from this lawsuit until discovery is conducted to determine the extent of "The Defendants" role in this plausible conspiracy.

## IV. <u>Additional Case Law Considerations:</u>

South Carolina Court decisions also support the contention that the proper jurisdiction would be the D.C. District Court. A plaintiff must only make a *prima facie* showing that the court has jurisdiction over the Defendant for the civil action to continue, and allegations in the Complaint to this effect are normally sufficient to warrant exercise of jurisdiction. <u>Brown v. Investment Management and Research, Inc.</u>, 475 S.E.2d 754 (1996). The court must take as true the allegations of the non-moving party and resolve all factual disputes in the non-movants' favor. <u>Id</u>. at 756. Whenever a plaintiff alleges a civil conspiracy perpetrated by both residents of a state and nonresidents, there is personal jurisdiction over the nonresidents as long as some of the actions of the conspiracy occurred within the state. <u>Hammond v. Butlert, Means, Evans, & Brown</u>, 388 S.E.2d 796, <u>cert. denied</u>, 498 U.S. 952, 111 S. Ct. 373, 112 L.Ed.2d. 335 (1990).

## V. <u>This Court Has Supplemental Jurisdiction Over Plaintiffs' State Law Claims.</u>

Along with the federal claims for violation of the Plaintiffs' civil rights, Plaintiffs have alleged various state law claims against Defendants, including "The

Defendants." Federal courts have supplemental jurisdiction over any state law claims, which form part of the same case or controversy. 28 U.S.C. § 1367. The central concern in deciding whether to assert supplemental jurisdiction over state law claims is the burden on the parties and the judicial system if the state law claims are not retained and the Plaintiffs are forced to file several suits in several jurisdictions. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130 (1996).

In the present case, all of the Plaintiffs' claims alleged in the Complaint are related to a conspiracy emanating from the FBI in Washington, D.C., and involving FBI personnel who report to FBI Headquarters in Washington D.C., assigned by FBI Headquarters to duty in West Virginia, Virginia, North Carolina and South Carolina and other individuals and entities with whom "The Defendants" engaged in a pattern of harassment, extortion, racketeering and oppression, in an attempt to discredit the Plaintiffs and to a cover-up of crimes related to taking control of their business and denying *Pro Se* Plaintiffs constitutionally guaranteed rights. It would be extremely burdensome and cost prohibitive to break apart all of the various claims and require the *Pro Se* Plaintiffs to pursue this litigation piecemeal in various state courts in West Virginia, Virginia, South Carolina, North Carolina and Washington, D.C. The more judicially efficient plan for all parties involved is to have all of these claims

adjudicated at one time to reduce the costs and burdens on the parties and to ensure a consistent result.

This Court clearly has the discretion to exercise supplemental jurisdiction over Plaintiffs' state law claims and should do so in this case to promote judicial economy and efficiency, and to reduce the burden and costs on all parties.

## VI. *Pro Se* Plaintiffs have a Right to Their Day in Court to Determine the responsibility for the torts Committed against them.

The United States Supreme Court determined that the Plaintiffs have a right through the Courts to determine the Defendants responsible for the various tort damages suffered by the Plaintiffs, in Price Waterhouse v. Hopkins the Supreme Court ruled"

> "…in the area of tort liability, from whence the dissent's "but-for" standard of causation is derived, see post, at 282, the law has long recognized that in certain "civil cases" leaving the burden of persuasion on the plaintiff to prove "but-for" causation would be both unfair and destructive of the deterrent purposes embodied in the concept of duty of care. Thus, in multiple causation cases, where a breach of duty has been established, the common law of torts has long shifted the burden of proof to multiple Defendants to prove that their negligent actions were not the "but-for" cause of the plaintiff's injury. See e. g., Summers v. Tice, 33 Cal. 2d 80, 84-87, 199 P. 2d 1, 3-4 (1948). The same rule has been applied where the effect of a Defendant's tortious conduct combines with a force of unknown or innocent origin to produce the harm to the plaintiff. See Kingston v. Chicago & N. W. R. Co., 191 Wis. 610, 616, 211 N. W. 913, 915 (1927) ("Granting that the union of that fire [caused by Defendant's [*264] [**1798] negligence] with another of natural origin, or with another of much greater proportions, is available as a defense, the burden is on the Defendant to show that . . . the fire set by

him was not the proximate cause of the damage"). See also 2 J. Wigmore, Select Cases on the Law of Torts § 153, p. 865 (1912) ("When two or more persons by their acts are possibly the sole cause of a harm, or when two or more acts of the same person are possibly the sole cause, and the plaintiff has introduced evidence that one of the two persons, or one of the same person's two acts, is culpable, then the Defendant has the burden of proving that the other person, or his other act, was the sole cause of the harm")."

Price Waterhouse v. Hopkins, 490 U.S. 228, 263-264 (U.S. 1989)

In the case before this Court the *Pro Se* Plaintiffs suffered various serious tort damages and it would be both inequitable and unconscionable to allow "The Defendants" released from the case without proper discovery being conducted by the *Pro Se* Plaintiffs and the findings of such discovery be used to lawfully bring "The Defendants" to justice in this Court.

## VII. Conclusion.

Accordingly, Plaintiffs respectfully request the Court that Defendants Palmetto Health Care; Suzanne Tillman, Individually and in her official capacity as Director with Palmetto Senior Care; Jennifer Brewton, Individually and in her official capacity with Palmetto Senior Care; Kathy Beers, Individually and in her official capacity as Administrator with Palmetto Senior, Care; The State of South Carolina; The State of South Carolina Law Enforcement Division; Captain David Caldwell, Individually and in his official capacity with SLED; Captain Larry

Gainey, Individually and in his official capacity with SLED; Mark Keel, Individually and in his official capacity with SLED; Mike Prodan, Individually and in his official capacity with SLED; The South Carolina Department of Social Services; Princess Hodges, Individually and in her official capacity with DSS; Susan Stroman, Individually and in her official capacity with DSS; John Weaver, Individually and in his official capacity as the Horry County Attorney; Horry County Police Chief, John Morgan, Individually and in his official capacity with Horry County and Horry County's motion to dismiss be denied.

Respectfully Submitted by:
September 21, 2010

Doris Holt[1], *Pro Se*
Suite 183
7001 Saint Andrews Rd.
Columbia, SC 29212
(803) 414-0889

James Spence, *Pro Se*
Suite 183
7001 Saint Andrews Rd.
Columbia, SC 29212
(803) 414-0889

---

[1] Signed for by her self-appointed POA, her son James Spencer.

Rodney K. Lail, Plaintiff, *Pro Se*
608 18th Avenue North
Myrtle Beach, SC 29577
(843) 626-3229

Irene Santacroce, Plaintiff, *Pro Se*
205 Deer Trace Circle
Myrtle Beach, SC 29588
(843) 455-0891

Ricky Stephens, Plaintiff *Pro Se*
207 Deer Trace Circle
Myrtle Beach, SC 29588
(843) 283-6751

Marguerite Stephens, Plaintiff, *Pro Se*
207 Deer Trace Circle
Myrtle Beach, SC 29588
(843) 283-6751

Bruce Benson, Plaintiff, *Pro Se*
848 N. Rainbow Bl., Suite 214
Las Vegas, Nevada 89107-1103
(702) 524-9006

Dan Green, Plaintiff, *Pro Se*
848 North Rainbow Blvd., Suite 170
Las Vegas, Nevada 89107
(310) 337-2820

Nicholas C. Williamson, Plaintiff, *Pro Se*
8005 White Ash Court
Oak Ridge, North Carolina 27310
(336) 210-0672

Virginia Williamson, Plaintiff, *Pro Se*
8005 White Ash Court
Oak Ridge, North Carolina 27310
(336) 210-0672

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of September, 2010, I electronically filed the foregoing **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (DOCUMENT 19),** with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Monte Fried
DC Bar No. MD00363
WRIGHT, CONSTABLE & SKEEN, L.L.P.
One Charles Center, 16th Floor
100 North Charles Street
Baltimore, Maryland 20201
(310) 659-1300
mfried@wcslaw.com

William C. McDow
*Pro Hac Vice* (Admission Pending)
RICHARDSON PLOWDEN & ROBINSON, P.A.
1900 Barnwell Street (29201)
P.O. Drawer 7788
Columbia, South Carolina 29202
(803) 576-3719
bmcdow@richardsonplowden.com

Eugene H. Matthews
*Pro Hac Vice* (Admission Pending)
RICHARDSON PLOWDEN & ROBINSON, P.A.
1900 Barnwell Street (29201)
P.O. Drawer 7788
Columbia, South Carolina 29202
(803) 576-3733
gmatthews@richardsonplowden.com

Shelton W. Haile
*Pro Hac Vice* (Admission Pending)
RICHARDSON PLOWDEN & ROBINSON,
P.A.
1900 Barnwell Street (29201)
P.O. Drawer 7788
Columbia, South Carolina 29202
(803) 576-3715
shaile@richardsonplowden.com


by: _____
   James Spencer
   Suite 183
   7001 Saint Andrews Road
   Columbia, SC 29212
   e-mail:  JamesBSpencer@sc.rr.com
   803-414-0889