**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Rodney Lail, et al.,

Plaintiffs,

v.

United States Government, et al.,

Defendants.

**C.A. No. 10-CV-210-(PLF) (ECF)**

# PLAINTIFF'S RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS COMPLAINT

*Pro Se* Plaintiffs Rodney Lail, Nick Williamson, Virginia Williamson, Irene Santacroce, Bruce Benson, Dan Green, Ricky Stephens, Marguerite Stephens, and James Spencer, (Now deceased Doris Holt)[1] ("Plaintiffs") respectfully submit this Memorandum of Points and Authorities in support of their Opposition to the Federal Defendants' Motion to Dismiss Plaintiffs' Complaint (Document No. 84).

[1] Doris Holt died on February 19, 2011, while in the custody of defendants in this matter. Because of the nature of her death (Starvation and Dehydration), the Coroner is conducting an autopsy and Doris Holt has neither been buried nor has her estate established as the required local documents cannot be completed for another two weeks. The Court denied the Plaintiffs' motion for an extension time needed to address the issues raised and creating the estate in Plaintiffs' Document No. 88 in the Minute Order issued on 2/24/11. Plaintiffs also humbly request the Court to take Judicial Notice of Plaintiff's Motion No. 69, which if it had been approved, may have saved the life of Plaintiff Doris Holt.

The Federal Defendants request stated in Document No. 84 that the Plaintiffs' complaint be dismissed under Fed. R. Civ. P, 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6) is without merit.

**INTRODUCTION AND SUMMARY**

The Federal Defendants are attempting to confuse this Honorable Court by using the litigation of Southern Holdings, et al., vs. Horry County to muddy and confuse the nature of the causes of action brought before this Court. The fact that the Federal Defendants actively interfered in that case and committed torts related to the concealment of civil rights violations does not make this case in any way a retrial of that case. The Federal Defendants in this case are not alleged to have committed acts that justify the same causes of actions of the Plaintiffs in the Southern Holdings case (South Carolina Federal District Court 4-02-1859-12), but are alleged to have committed acts that have deprived the Plaintiffs of their civil rights including their right to a fair trial in that case. The causes of action and Defendants in this case are completely different from the causes of actions and the Defendants in the Southern Holdings case. The Federal Defendants attempt to mislead this Court into believing that the Plaintiffs are attempting to retry the prior case. Nothing can be further from the truth. This case concerns the Federal Defendants depriving the Plaintiffs of their constitutional rights in an effort to cover up the vulnerability of their vaunted FBI-NCIC system to criminal abuse,

previously demonstrated by the Plaintiffs. Included in these causes of action is the undermining of the Southern Holdings case by the Federal Defendants in conjunction with the other Defendants to deprive the Plaintiffs of their rights guaranteed by the United States Constitution, including, but not limited to, their right to a fair trial and the right to equal protection under the law on the local, state and federal levels.

The Federal Defendants have incorporated a multitude of citations in their Memorandum that would be applicable if this case actually were an attempt at retrial. However, in this case these citations are nothing but a furtherance of attempts by the Federal Defendants to create an illusion that diverts the attention away from what this case is about: which is the Federal Defendants abuse of power and authority to deprive the Plaintiffs of their civil rights including, but not limited to, the Plaintiffs right to due process. This was apparently done to keep the vulnerability of the FBI-NCIC system to criminal abuse from public scrutiny in continuance of the Justice Departments well-documented policy against the imposition of oversight controls to prevent misuse of the FBI-NCIC system at various levels of law enforcement.[2]

---

[2] United States General Accounting Office Testimony before the United States House Judiciary Subcommittee on Civil and Constitutional Rights on the "National Crime Information Center", "Legislation Needed to Deter Misuse of Criminal Justice Information, July 28, 1993. GAO/T-GGD-93-41

These latter issues were not in any way dealt with or identified in the prior Court case and the litigation of these issues does not make this case a retrial of that case.

The United States Court of Appeals upheld the District Court's decision in Peter J. Limone, et al., v. United States of America, where the Court found that,

> "Some three decades later, the FBI for the first time disclosed that all along it had possessed reliable intelligence undercutting the witness's account of the murder and that it had suppressed this intelligence. The FBI neither pr[offered] charges against the prisoners nor swore out a complaint against them. There was not a shred of evidence that the FBI induced the state to pursue the murder case. Though FBI agents assisted the cooperating witness in shoring up his false tale when inconsistencies came to light, that subsequent assistance did not support a conclusion that the FBI encouraged state actors to institute the prosecution."

Limone v. United States, 579 F.3d 79 (1st Cir. Mass. 2009)

In the Southern Holdings case, the Federal Defendants actively participated in covering up civil rights violations in attempting to keep hidden the misuse of the FBI-NCIC information system by a now convicted felon. However, the Federal Defendants in the case before this Honorable Court went a step further than suppressing evidence as the United States Defendants did in the Limone case. In this case the Federal Defendants not only suppressed evidence but actively participated in the fabrication of evidence. The Federal Defendants violated the Plaintiffs civil rights including, but not limited to, not following ***non-discretionary procedures*** detailed in the FBI Manual of Operating Procedures, which is clearly a

violation of the Plaintiffs rights to equal protection under the law and due process rights guaranteed by the United States Constitution. Thus, for causes of action including. but not limited to, denying the Plaintiffs due process rights and equal protection under the law the Federal Defendants are now for the first time being brought to trial just as the causes of action against the United States were brought in Limone v. United States, thirty years later.

The Plaintiffs hereby desire this Honorable Court to take Judicial Notice of the crucially important fact that the FBIHQ in Washington, DC had concealed FBI procedural manuals including the FBI Manual of Investigative and Operational Guidelines ("MIOG"), FBI Laboratory Procedure Manuals, and the FBI Manual of Rules and Regulations by wrongfully invoking national security and thereby suppressing through acts of fraud the crucially important manuals rightfully due to and legally requested by the Plaintiffs (how the FBI works should be open to all United States citizens who pay for its operation).

In January of 2009, the Plaintiffs for the first time obtained a copy of MIOG and the other sought after manuals that were fraudulently claimed to be classified for National Security by the FBIHQ located in Washington DC. It was at that time the Plaintiffs discovered the numerous violations by the Federal Defendants of their Constitutionally guaranteed civil rights including, but not limited to, their right to equal protection under the law and their right to due process. Therefore, it

is clear that the case before this Honorable Court is in no way a retrial of another case.

## BACKGROUND

### a. Plaintiffs' Prior Litigation

The Federal Defendants wrongly cite the Plaintiffs prior litigation as the gravamen of this case. There are several factually incorrect statements concerning the prior litigation in the Federal Defendants Motion to Dismiss, but to argue those points would divert the attention away from the true core of this case.[3] The heart of this case includes, but is not limited to, the following: 1) the Federal Defendants participation in a cover-up, 2) the Federal Defendants suppression of evidence, 3) the Federal Defendants fabrication of evidence, 4) the Federal Defendants wrongful interference in a civil case in which the United States was not a party, wrongfully causing an outcome unfavorable to the Plaintiffs, 5) the Federal Defendants involvement in subornation of perjury, 6) the Federal Defendants violations of the civil rights of the Plaintiffs, 7) the Federal Defendants, despite the Federal Government not being a party to the case, willfully breaking the FBI's own

[3] As an example, the Federal Defendants wrongly claimed all the Plaintiffs were present when the purported agreement was reached and read into the record. Plaintiff Doris Holt was not present nor did she give authority to settle the case. The Plaintiffs that were present in that action never executed a settlement agreement as they were informed no agreement was final until it was executed in writing and never received any funds in settlement of the case as the facts concerning the circumstances of that case are still in dispute and being litigated at this time. Additionally, the Federal Defendants cited from a newspaper article the case cost Horry County $400,000 in funds to litigate which is a total embellishment as Horry County's insurance carrier bore the cost of litigation along with the United States Government. The United States Government participated on the Defendants behalf by wrongly providing personnel and funds on behalf of the civilian and local law enforcement defendants against the FBI prohibition to participate in civil cases in which the United States is not a party to the action in addition to committing tortious actions and fraud against the Plaintiffs.

rules that preclude involvement in a civil case the Federal Government is not a party to and in so doing becoming active participants approved by FBIHQ in Washington DC and paid for by the United States Government, and 8) the Federal Defendants commission of fraud by invoking national security to conceal tortious activity by the Federal Defendants.

**b. Plaintiffs' Complaint**

The Plaintiffs have adjusted their complaint to improve the consistency with the facts and pleadings in their proposed "Third Amended Complaint." The Plaintiffs have deleted the Racketeer Influenced and Corruption Organizations Act ("RICO"), 18 U.S.C. § 1961 cause of action against the Defendants and adjusted the complaint to reflect the death of Plaintiff Doris Holt.

## STANDARD OF REVIEW

**a. Fed. R. Civ. P. 12(b)(1)**

Plaintiffs accept the citations used by the Federal Defendants and based on the over abundance of facts in the Third Amended Complaint believe the citations more than meet the criteria set under Fed. R. Civ. P. 12(b)(1).

**b. Fed. R. Civ. P. 12(b)(6)**

Plaintiffs accept the citations used by the Federal Defendants and based on the over abundance of facts in the Third Amended Complaint believe that the facts alleged by Plaintiffs more than meet the criteria set under Fed. R. Civ. P. 12(b)(1).

## ARGUMENT

### a. Sovereign Immunity Does Not Bar Plaintiff's Claims for Money Damages

The *Pro Se* Plaintiffs have attached their proposed Third Amended complaint to incorporate the proper wording as suggested in the Federal Defendants' Memorandum. The *Pro Se* Plaintiffs simply seek to prove their case through discovery and trial.

Further, the Federal Defendants wrongly maintained that the Federal Defendants were not served in their individual capacities and therefore the Plaintiffs are barred from any action against the Federal Defendants in their individual capacities. This is simply wrong.

The Federal Defendants were in fact constructively served in their individual capacities or served in their individual capacities. Federal Defendant Thomas Marsh was individually served at his office by a process server (See Document No. 13, pg. 4). The remaining Federal Defendants were constructively individually served as the documents for individual service were sent to the office of the United States Attorney of the District of Columbia and received respectfully by W. Haight and Ronald Machen, Document No. 13 and Document No. 25. Requests were sent with the documents to the United States Attorney asking the United States Attorney either to receive service for the individual Federal Defendants or provide the individual Federal Defendants addresses by return mail so Plaintiffs could

perfect service individually. (See Document No. 13 pgs 24 – 27 and Document No. 25 – pgs 2 -3.) The United States Attorney's office sent no timely objection to accepting individual service nor provided a listing of addresses of the Federal Defendants to the Plaintiffs so the Plaintiffs could perfect service.

Plaintiffs were not informed of the United States Attorneys unwillingness to cooperate until Document No. 84 the Federal Defendants Motion for Dismissal was received. Additionally, the Federal Defendants asked for and received an extension of time from this Honorable Court for the individual Federal Defendants to find individual counsel. Therefore, in the spirit of cooperation between opposing parties and the lack communication to the contrary the Plaintiffs had every reason to believe the Federal Defendants had been individually served.

**b. The United States is a Proper FTCA Defendant**

The *Pro Se* Plaintiffs have amended their proposed Third Amended complaint to incorporate the proper wording. The *Pro Se* Plaintiffs simply seek to prove their case through discovery. Accordingly, the dismissal requested for the wording in error by the *Pro Se* Plaintiffs is now revised so that the Plaintiffs' FTCA claims are stated properly and do not list the Federal Agencies and Employees as Defendants. Therefore, the motion to dismiss by the Federal Defendants under subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) should be denied.

### c. Plaintiffs' Claims are Not Barred by Res Judicata and Collateral Estoppel

The Federal Defendants state in their Memorandum that the Southern Holdings case and the action before this Honorable Court have the same "nucleus of facts" and therefore should be barred by res judicata and collateral estoppel. This is totally inaccurate.

Whether the claim that was not raised in the previous action could have been raised therein depends in part on whether the same transaction or a connected series of transactions is at issue, and whether the same evidence is needed to support both claims. *Pike v. Freeman, 266 F.3d 78,91(2d cir. 2001).* Courts examine four factors to determine whether there is an identity of claims: (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by the prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions. Whether two suits arise out of the same transactional nucleus depends upon whether they are related to the same set of facts and whether they could conveniently be tried together. *ProShiplLne Inc. v. Aspn infrastructures, Ltd., 609 F.3d 960. 968 (9th Cir. 2010).*

The Southern Holdings case was about the violation of civil rights of the Plaintiffs by Defendants including a now convicted felon and local police officers from two states along with civilian accomplices. The "nucleus of facts" centered on the theft of the assets of a corporation involved in international and interstate commerce by Defendant civilians and Defendant local police officers. The Defendants in the Southern Holdings case are not Defendants in the case before this Honorable Court. Claiming the misuse of the FBI-NCIC system as a common "nucleus of facts" to impose res judicata would be the equivalent of saying the suppression of evidence by the United States government in Limone v. United States, 579 F.3d 79 (1st Cir. Mass. 2009) was barred by res judicata because both Limone cases related to the same murder victim.

Similarly, "collateral estoppel 'represents a decision that the needs of judicial finality and efficiency outweigh the possible gains of fairness or accuracy from continued litigation that previously has been considered by a competent tribunal.''' *Bailey v. DiMario, 925 F. Supp. 801, 810 (D. D.C. 1995) (quoting Nasem b. Brown, 595 F.2d 801, 806 (D.C. Cir. 1979)).* Collateral Estoppel "relieves the parties of the expense, vexation, and burdens attending multiple lawsuits; conserves judicial resources; minimizes the risk of forum shopping, piecemeal litigation, and inconsistent decisions; and provides finality in the resolution of disputes. *Id.* (citations omitted). If an issue is raised, collateral

estoppel precludes a party from raising "the entire issue" again, not simply "the argument raised in support of it in the earlier proceedings." *Id.*

In January 2009, after the Plaintiffs discovery of the FBI's MIOG, and the FBI laboratory procedure manuals which had been fraudulently concealed by the Federal Defendants from the FBIHQ in Washington, DC who fraudulently claimed such manuals were protected by national security, it became apparent to Plaintiffs in this case that the Federal Defendants actions or lack of actions thereof were in violation of non-discretionary required FBI procedures.

The failure to provide equal protection under the law and due process by the Federal Defendants are clearly distinct from the facts in the Southern Holdings case. It was the Federal Defendants who wrongfully suppressed evidence and fabricated evidence and committed fraud to conceal such actions so that these torts were not known or could have been known to Plaintiffs until their discovery of the manuals in January of 2009.

The Plaintiffs in this case had no way of knowing that the decisions by the Federal Defendants were in violation of their civil rights and in violation of mandatory FBI policy and procedures. The fact that the FBI-NCIC reports had been fabricated by the Federal Defendants had not been known by the Plaintiffs in the Southern Holdings, case. The fabricated FBI-NCIC reports were *"certified reports"* received by the Plaintiffs through the Washington DC Office of a sitting

member of the Senate Judiciary Committee, Senator Lindsey Graham. The Federal Defendants in their motion to dismiss characterize the Plaintiffs' allegations in their complaint as "fanciful and bizarre" (line 7, ¶ 27). First, the Plaintiffs agree the use of the Chairman of the Senate Judiciary Subcommittee on the United States Constitution, Civil Rights and Property Rights, Senator Lindsey Graham, as an unwitting accomplice in providing fabricated, *"certified"* FBI-NCIC reports for use in Federal District Court to undermine a civil rights case, could be viewed as "fanciful" by the Federal Government perpetrators. However, the Plaintiffs much prefer the more appropriate characterization of such an act as "arrogant", "unlawful", "deceitful", and as such demonstrates the Federal Defendants' outward contempt for: the authority and integrity of the United States Senate, the role of United States Senate Judiciary Subcommittee on Civil Rights, and the critical importance of maintaining the integrity of the United States Judicial system.

The Plaintiffs find the use of the word "bizarre" based on the history of the FBI and the circumstances of this case as inappropriate. In this case, to preserve the image of the FBI-NCIC system, a few telephone calls were made, favors done interagency, and the FBI subsequently preserved a part of its image which is publicly known to be a major driving force behind many of the FBI's actions and/or inactions.

In the facts alleged before this Honorable Court the Federal Defendants not only suppressed evidence, but fabricated evidence. Additionally, the FBI provided an expert witness (Federal Defendant Noel Herold) for local law enforcement and civilian defendants with authorization from the FBIHQ in Washington DC, where Federal Defendant Herold presented perjured testimony, fabricated documents and fabricated examination results. Further this witness was found long after the Southern Holdings trial concluded to have a fabricated background and numerous resumes tailored for any particular case he might be testifying in for the FBI. Further this individual was supplied with Department of Justice Attorneys to represent Noel Herold in the Southern Holdings Case and these attorneys fraudulently claimed national security interests to conceal documents that would have exposed the Federal Defendants role in undermining the Southern Holdings trial.

**d. Plaintiffs' Claims are Not Time Barred by Statute of Limitations**

1. FTCA Claims and Bivens Claims

The Federal Defendants' contentions that the Plaintiffs' claims are time barred is not supported by the law or facts. A tort claim generally accrues at the time of the Plaintiffs injury. *United States v. Kubrick*, 444 U.S. 111, 120 (1979). At a minimum, the claim accrues "by the time a plaintiff has discovered both his

injury and its cause." Sexton v. United States, 832 F. 2d 29, 633(D.C.Cir. 1987). Plaintiffs FTCA claims are not time barred in this case as *the Plaintiffs had no knowledge of what was required by the FBI manuals or of the Federal Defendants in civil rights cases* that *were non-discretionary, or of the requirements of the FBI laboratory procedures until January 2009*.

In addition, it was the Federal Defendants themselves who hid this knowledge and information from the Plaintiffs through the fraudulent invocation of National Security interests to keep the documents out of the Plaintiffs possession. The Supreme Court has long held that in cases of fraud:

> "…the Court described two situations in which the "strict letter of general statutes of limitation" would not be followed, id., at 347. The first situation is "where the ignorance of the fraud has been produced by affirmative acts of the guilty party in concealing the facts," and the second is "where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part." [***290] Id., at 347-348. The former involves fraudulent concealment; the latter defines undiscovered fraud. The Court concluded in Bailey that fraudulent concealment, which was at issue in that case, tolls the running of the statute of limitations when the fraud "has been concealed, or is of such character as to conceal itself." Id., at 349-350. To hold otherwise, reasoned the Court, would "make the law which was designed to prevent fraud the means by which it is made successful and secure." Id., at 349. In Holmberg v. Armbrecht, 327 U.S. 392, 397, 90 L. Ed. 743, 66 S. Ct. 582 (1946), the Court extended the reach of this tolling doctrine when [*648] it observed that it is to be "read into every federal statute of limitation."
>
> Taylor v. Freeland & Kronz, 503 U.S. 638, 647-648 (U.S. 1992)

Additionally, the Federal Defendants disregarded the latest claim of failure of the Federal Defendants to follow the Federal Requirements of MIOG is from January 2010, when Doris Holt was wrongfully taken by Defendants in including,

but not limited to, violation of her civil rights, she finally died prematurely and in unjustified captivity by the Defendants on February 19, 2011.

**e. This Court Has Personal Jurisdiction over named Federal Defendants**

The vortex of the tort claims in this case is Washington, DC. FBIHQ in Washington, DC is in charge of all civil rights investigations and directly supervises such. FBIHQ wrongfully authorized the use of Defendant Noel Herold in a civil case (Southern Holdings, et al. vs. Horry County, et al.) in which the United States was not a party as an expert witness for civilian and non-civilian local law enforcement Defendants. It was the FBI in Washington DC who coordinated the fabricated "certified" NCIC reports through United States Senator Lindsey Graham's Office. The FBI in Washington DC is the central repository for all FBI files on this matter. It is not a coincidence that FBI personnel located in offices in West Virginia, Virginia, North Carolina and South Carolina all violated their mandatory MIOG requirements, and the FBIHQ in DC which is in charge and supervises and manages all civil rights cases and FBI personnel involved allowed this to happen under their management responsibility which was the direct and proximate cause for the injuries to the Plaintiffs. It is also in the interest of the conservation of judicial assets that this case be heard by this Honorable Court.

**f. Plaintiff's FTCA and Bivens Claims Should Not Be Dismissed for Improper Venue**

1. FTCA Claims

An FTCA action against the United States "may be prosecuted only in the judicial district where the Plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402 (b). "Under the prevailing interpretation of second 1402(b), venue is proper in the District of Columbia if sufficient activities giving rise to Plaintiffs cause of action took place here." *Franz v. United States*, 591F. Supp. 374, 378 (D. D. C. 1984).

In the case before this Court the main decision makers were in Washington, DC. The personnel decisions are all decided in Washington, DC. The key decisions in this case regarding omissions and management of personnel were made in Washington, DC. Since all the Federal Defendants report to Washington, DC and all decisions are made in Washington, DC, and all management of the Federal Defendants actions are out of the Washington, DC. The Washington, DC based inspection division either through omission or intentional action failed to ensure the management of the Federal Defendants and in the case of Federal Defendant Noel Herold actions were directed out of Washington, DC as are all the Federal Defendants. Therefore, the District of Columbia is the proper venue not

simply because the FBIHQ is located there but the actions of the Federal Defendants were directed from Washington, DC.

2. Bivens Claims

The Plaintiffs complaint clearly has claims against the Federal Defendants in their individual capacity and the Federal Defendants claim that they should be dismissed under Fed. R. Civ. P. 12(b)(3) is without merit. Under § 1391(b), such a cause of action may be brought only in a judicial district where: (1) any defendant resides if all defendants reside in the same state; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) any defendant may be found if there is no district in which the action may otherwise be brought.

In this case the venue is proper because the majority of the alleged events and/or omissions took place and/or were directed from and/or were the responsibility of the FBIHQ management located in Washington, DC. Therefore, the venue is proper because the vortex of the Plaintiffs claims centered on the FBIHQ. Additionally, geographically the District of Columbia is centrally located amongst the various states several of the Federal Defendants reside in addition to all the records relevant to this case being located in the FBIHQ in the District of Columbia.[4]

[4] If the Court decides irrespective of the Plaintiffs' position that the venue is not proper, the Plaintiffs respectfully request under 28 U.S.C. § 1406(a) the Court transfer the case to a district where the Court believes the venue is proper.

**g. Plaintiffs' Claims Should not be Dismissed for Failure to State a Claim**

1. Federal Defendants in this case are not entitled to absolute or qualified immunity

**A.** Federal Defendants Perry and Benson are protected by absolute immunity

The Federal Defendants wrongly assert that the only claim against Defendants Perry and Benson are the submission of a fabricated CV. Perry and Benson went way beyond the submission of fabricated evidence, Perry and Benson knowingly fraudulently invoked national security to keep MIOG and other manuals out of the Plaintiffs possession to protect discovery of tortious actions by the Federal Defendants. This goes beyond the simple presentation of evidence and both Perry and Benson knew or should have known the manuals sought by the Defendants were in fact not protected by National Security interests and that their wrongful actions were part of a fraudulent action that was never intended to be protected by absolute immunity. Therefore, Plaintiffs request the Court to disallow their absolute immunity for actions involving fraud.

B. All Federal Defendants are not entitled to Qualified Immunity

Once the individual defendant raises qualified immunity courts were familiarly required to resolve two issues: (1) whether a constitutional right would

have been violated on the facts alleged; and if the violation is established, then (2) whether the right alleged to have been violated was clearly established such that a reasonable person would have known. *Saucier v. Katz*, 533 U.S. 194, 1969 (2001). The Federal Defendants wrongly claim in their motion to dismiss that the decision to investigate is a civil rights claim is a discretionary decision. The FBI MIOG clearly states that it is non-discretionary. In this regard both prongs under Saucier would have been met. In regard to qualified immunity and non-discretionary decisions, the United States Supreme Court has ruled:

> We recognize that the plurality opinion in Barr v. Matteo, supra, contained language that has led some courts to believe that conduct within the outer perimeter of an official's duties is automatically immune from suit. See, e. g., Poolman v. Nelson, 802 F. 2d, at 307-308. A close reading of Barr, however, shows that the discretionary nature of the act challenged in that case was central to Justice Harlan's opinion. Justice Harlan specifically noted that the conduct in question "was an appropriate exercise of discretion which an officer of that rank must possess if the public service is to function effectively" and that immunity applies "to discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority." 360 U.S., at 575 (footnote omitted). Moreover, Barr did not purport to depart from the widely followed common-law rule that only discretionary functions are immune from liability, see W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 1059-1060 (5th ed. 1984).
>
> Westfall v. Erwin, 484 U.S. 292, 298 (U.S. 1988)

Further, the Federal Defendants in their motion to dismiss wrongly claim the Plaintiffs invoked the 8th amendment and the 14th amendment against the Federal Defendants. Clearly this is not the case. The Federal Defendants also wrongly claim the Plaintiffs failed to allege any facts related to the Federal Defendants violating a statutory or constitutional right when in fact the Third Amended

Complaint is filled with such facts. Plaintiffs also disagree with the Federal Defendants statement in their motion to dismiss that the Plaintiffs have failed to state a proper Bivens claim ¶¶ 254- 262.

2. Plaintiffs have withdrawn their RICO Cause of Action

3. Plaintiffs have Stated a Claim under 42 U.S.C. § 1985

The Federal Defendants in closing wrongly claim the Plaintiffs failed to state a claim under 42 U.S.C. § 1985 and that the Plaintiffs failed to meet the criteria for a proper claim under the South Carolina Civil Conspiracy law. Plaintiffs maintain they have in fact met all criteria in their Third Amended Complaint to make a proper claim under the South Carolina Civil Conspiracy law. Additionally, Plaintiffs. Finally, the Federal Plaintiffs wrongly claim the Plaintiffs alleged conspiracy is comprised of disjointed facts. The facts are anything but disjointed.

## CONCLUSION

For the foregoing reasons, the *Pro Se* Plaintiffs respectfully request this Honorable Court that the Federal Defendants' Motion to Dismiss be denied and the Plaintiffs be allowed to conduct discovery and prove the patterns and facts contained in the complaint are true in the interest of justice. The *Pro Se* Plaintiffs are law abiding individuals who are merely seeking justice through the Courts and in this case the right to conduct discovery to prove their well founded allegations.

Respectfully submitted this 21st day of March 2011, by

Rodney K. Lail, Plaintiff, ***Pro Se***
608 18th Avenue North
Myrtle Beach, SC 29577
(843) 626-3229

Irene Santacroce, Plaintiff, ***Pro Se***
205 Deer Trace Circle
Myrtle Beach, SC 29588
(843) 455-0891

Ricky Stephens, Plaintiff ***Pro Se***
207 Deer Trace Circle
Myrtle Beach, SC 29588
(843) 283-6751

Marguerite Stephens, Plaintiff, ***Pro Se***
207 Deer Trace Circle
Myrtle Beach, SC 29588
(843) 283-6751

Bruce Benson, Plaintiff, ***Pro Se***
848 N. Rainbow Bl., Suite # 214
Las Vegas, Nevada 89107-1103
(702) 524-9006

Dan Green, Plaintiff, ***Pro Se***
848 North Rainbow Blvd., Suite 170
Las Vegas, Nevada 89107
(310) 337-2820

Nicholas C. Williamson, Plaintiff, ***Pro Se***
8005 White Ash Court
Oak Ridge, North Carolina 27310
(336) 210-0672

Virginia Williamson, Plaintiff, ***Pro Se***
8005 White Ash Court
Oak Ridge, North Carolina 27310
(336) 210-0672

________________________
Doris Holt (Deceased)[5]

________________________
James Spencer, *Pro Se*
Suite 183
7001 Saint Andrews Road
Columbia, SC 29212
(803) 414-0889

[5] Doris Holt's estate will be established in two weeks due to document delays related to local laws.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of March, 2011, I electronically filed the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS COMPLAINT** with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Kenneth Adebonojo, Esquire
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W., Civil Division
Washington, D.C. 20530

Monte Fried, Esquire
WRIGHT, CONSTABLE & SKEEN, L.L.P.
100 North Charles Street
Suite 1600
Baltimore, MD 21202-3805

Eugene H. Mathews, Esquire
RICHARDSON, PLOWDEN & ROBINSON, P.A.
1900 Barnwell Street
PO Drawer 7788, Columbia, SC 29202

Shelton W. Haile, Esquire
RICHARDSON, PLOWDEN & ROBINSON, P.A.
1900 Barnwell Street
PO Drawer 7788, Columbia, SC 29202
Email: shaile@richardsonplowden.com

William C. McDow, Esquire
RICHARDSON, PLOWDEN & ROBINSON, P.A.
1900 Barnwell Street
PO Drawer 7788, Columbia, SC 29202
Email: bmcbow@richardsonplowden.com

Oliver Garcia, Esquire
AEGIS LAW GROUP LLP
901 F Street NW
Suite 500
Washington, DC 20004-1421
Email: ogarcia@aegislawgroup.com

Jason E. Bring, Esquire
Andrew B. Flake, Esquire
ARNALL GOLDEN GREGORY, LLP
171 17th Street NW, Suite 2100
Atlanta, Ga. 30363

Kevin M. Murray, Esquire
Carr Maloney PC
1615 L Street NW Suite 500
Washington, DC 20036
(202) 310-5500 – Telephone Number
(202) 310-5555 – Facsmile
Kmm@CarrMaloney.Com

Andrew Lindemann, Esquire
*Pro Se*
1611 Devonshire Drive
PO Box 8568
Columbia, SC 29202

E. Glenn Elliott, Esquire
*Pro Se*
*Individually and in his capacity with Aiken Bridges Law Firm*
Aiken, Bridges, Tyler and Saleeby, PA
181 E. Evans Street, Suite 409
PO Drawer 1931
Florence, SC 29503

Jay Saleeby, Esquire
*Pro Se*
*Individually and in his capacity with Aiken Bridges Law Firm*
Aiken, Bridges, Tyler and Saleeby, PA
181 E. Evans Street, Suite 409
PO Drawer 1931
Florence, SC 29503

Mary S. Diemer, Esquire
Nelson, Mullins Riley &
Scarborough, LLP
101 Constitution Avenue, NW
Suite 900
Washington, DC 20001

Paul T. Collins, Esquire
(*Pro Hac Vice*)
Nelson, Mullins Riley &
Scarborough, LLP
1320 Main Street, 17th Floor
Columbia, SC 29202
Email: Paul.Collins@NelsonMullins.com

By: ______________________
James Spencer, *Pro Se*
Suite 183
7001 Saint Andrews Road
Columbia, SC 29212
Email: JamesBSpencer@sc.rr.com
(803) 414-0889