UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                              )
RODNEY LAIL, *et al.*,                         )
                                              )
           Plaintiffs,                         )
                                              )
     v.                                        )          Civil Action No. 10-0210 (PLF)
                                              )
UNITED STATES GOVERNMENT, *et al.*,            )
                                              )
           Defendants.                         )
_____)

OPINION

           Pending before the Court are nine motions to dismiss the plaintiffs' second

amended complaint.  Those motions were filed, respectively, by the following defendants or

groups of defendants: (1) Kathy Beers, Jennifer Brewton, David Caldwell, Larry Gainey,

Princess Hodges, Horry County, Mark Keel, John Morgan, Palmetto Health Care, Mike Prodon,

the South Carolina Department of Social Services, the State of South Carolina, the State of South

Carolina Law Enforcement Division, Susan Stroman, Suzanne Tillman, and John Weaver ("the

South Carolina defendants"); (2) Brenda Hughes and Unihealth Post Acute Care of Columbia

("the Unihealth defendants"); (3) Shawn Markham and Susan Stewart; (4) Andrew Lindemann;

(5) Jay Saleeby; (6) E. Glenn Elliott; (7) Robert E. Lee; (8) the Academy Group, Inc.; and

(9) N. John Benson, David Caldwell, Phil Celestini, the Federal Bureau of Investigation, Paul

Gardner, David M. Hardy, Kerry Haynes, Noel Herold, Thomas Isabella, Jr., Michael

Kirkpatrick, Thomas Marsha, Monte Dell McKee, Matthew Perry, George Skaluba, Chris

Swecker, and the United States ("the federal defendants").

Also pending before the Court are (1) the *pro se* plaintiffs' motion for leave to proceed *in forma pauperis*, for an order authorizing the United States Marshals Service to effect service on plaintiffs' behalf, and for appointment of counsel, (2) plaintiffs' "motion for firewall protection," and (3) plaintiffs' motion for leave to file a third amended complaint. Because at least one of the plaintiffs appears to have substantial financial resources, the Court will deny the motion to proceed *in forma pauperis*. Furthermore, because the Court lacks personal jurisdiction over many defendants, and the second amended complaint fails to state a claim as to the other defendants, the pending motions to dismiss will be granted. The Court will deny as futile plaintiffs' motion for leave to file a third amended complaint, and will deny as moot plaintiffs' remaining motion for relief.[1]

---

[1]    The following documents were among those considered by the Court in resolving the pending motions: plaintiffs' second amended complaint ("2d Am. Compl."); plaintiffs' motion for leave to file a third amended complaint ("Mot. for 3d Am. Compl."); the South Carolina defendants' motion to dismiss ("SC MTD"); the plaintiffs' opposition to that motion ("SC Opp."); the reply in support of that motion ("SC Reply"); the Unihealth defendants' motion to dismiss ("Unihealth MTD"); plaintiffs' opposition to that motion ("Unihealth Opp."); the reply in support of that motion ("Unihealth Reply"); Shawn Markham and Susan Stewart's motion to dismiss ("Markham/Stewart MTD"); plaintiffs' opposition to that motion ("Markham/Stewart Opp."); the reply in support of that motion ("Markham/Stewart Reply"); Andrew Lindeman's motion to dismiss and related filings ("Lindeman MTD" and "Lindeman Opp."); Jay Saleeby's motion to dismiss and related filings ("Saleeby MTD" and "Saleeby Opp.); Robert E. Lee's motion to dismiss and related filings ("Lee MTD" and "Lee Opp."); the Academy Group's motion to dismiss and related filings ("Acad. MTD," "Acad. Opp.," and "Acad. Reply"); E. Glenn Elliott's motion to dismiss and related filings ("Elliott MTD" and "Elliott Opp."); the federal defendants' motion to dismiss and related filings ("Fed. MTD" and "Fed. Opp."); the plaintiffs' motion to proceed *in forma pauperis* and for other relief ("IFP Mot."); and the plaintiffs' "motion for firewall protection" ("Firewall Mot.").

# I. BACKGROUND

## A. South Carolina Litigation

Most of the claims in the plaintiffs' second amended complaint grow out of or are related to certain proceedings before the United States District Court for the District of South Carolina that took place between 2002 and 2008. In 2002, seven of the individuals currently proceeding as plaintiffs in this action — James Spencer, Rodney Lail, Irene Santacroce, Ricky Stephens, Marguerite Stephens, Doris Holt, and Nicholas Williamson — along with an entity called Southern Holdings, Inc., filed a civil complaint in the South Carolina district court. See Southern Holdings v. Horry County, Civil Action No. 02-1859, Complaint at 1 (D.S.C. May 29, 2002) ("SC Compl."). Each named individual plaintiff resided in South or North Carolina and was in some way connected with James Spencer and/or Southern Holdings, of which Mr. Spencer was allegedly the CEO and president. Id. ¶ 33. Irene Santacroce was the corporate secretary of Southern Holdings, id. ¶ 4; Ricky and Marguerite Stephens held equity in the corporation, id. ¶ 5; Nicholas Williamson sat on the corporation's board, id. ¶ 7; Doris Holt was Mr. Spencer's mother, id. ¶ 6; and Rodney Lail was a friend or acquaintance of Mr. Spencer. See id. ¶ 89.

The South Carolina complaint named twenty defendants, including the state of South Carolina; Horry County, South Carolina; the Horry County Police Department; and several police officers employed by Horry County or Myrtle Beach, South Carolina. SC Compl. at 1. The plaintiffs alleged that they had been the targets of a variety of tortious actions arising out of an attempt by two shareholders and former corporate officers of Southern Holdings, Ancil B. Garvin, III, and David Smith, to wrest control of the company from Mr. Spencer. Id. ¶¶ 33-37.

More specifically, Mr. Garvin and Mr. Smith allegedy "made telephone calls and sent e-mails and correspondence to Southern Holdings' shareholders, business partners and customers" in which they falsely "accus[ed]" three plaintiffs — Mr. Spencer, Mr. Williamson, and Ms. Santacroce — "of various crimes and immoral acts." Id. ¶ 40. Furthermore, in June of 2000, Mr. Garvin and Mr. Smith allegedly "orchestrated the entry of an invalid and illegitimate listing for Spencer's arrest in the NCIC [National Crime Information Center], a national database of outstanding felony warrants used by law enforcement agencies." SC Compl. ¶ 43. Because of the listing of Mr. Spencer as subject to arrest, an assistant district attorney in North Carolina — also named as a defendant in the suit — arranged for "the extradition of Spencer from South Carolina" to North Carolina. Id. ¶ 44. An arrest warrant was issued for Mr. Spencer in South Carolina by James Albert Allen, Jr., a police officer in Horry County and also a named defendant in the South Carolina case. Id. ¶ 47. Mr. Allen "maliciously and intentionally issued" the warrant "knowing that [the North Carolina warrant upon which it was based] was invalid." Id. ¶ 50.

On June 7, 2000, while searching for Mr. Spencer in order to effect his arrest, various police officers allegedly visited and searched the homes of three plaintiffs without search warrants and without probable cause. See 2d Am. Compl. ¶¶ 51-65. The same evening, the plaintiffs claimed, the car of plaintiff Ricky Stephens was pulled over by a defendant police officer, who "maliciously and intentionally pulled over Stephens' vehicle for the sole purpose of scaring, intimidating and humiliating Stephens." Id. ¶¶ 66-74. Two named defendants "and other unidentified individuals" were said to have "repeatedly threatened, harassed and stalked"

4

some plaintiffs, "engag[ing] in numerous and continuous acts designed and intended to intimidate and scare them." Id. ¶ 75.

Although a court invalidated the South Carolina arrest warrant for James Spencer in July 2000, on August 5, 2000, Horry County police officers pulled over the car occupied by Mr. Spencer and co-plaintiff Rodney Lail and arrested Mr. Spencer. SC Compl. ¶¶ 89-93. Mr. Spencer was handcuffed and "put in the back of [a police] car without air conditioning in extremely hot temperatures with the windows rolled up." Id. ¶ 99. The arresting officers allegedly learned by contacting their dispatcher that there was no longer an outstanding warrant for Mr. Spencer's arrest, but they nevertheless left Mr. Spencer handcuffed in the police car while they searched his vehicle. Id. ¶ 109. After the search, Mr. Spencer was charged "with unlawful possession of a firearm and giving false information to a law enforcement officer." Id. ¶ 116. He spent three days in jail before posting bond. Id. ¶ 118. The charges against Mr. Spencer were eventually dismissed. Id. ¶ 124. According to the South Carolina complaint, there had never been probable cause for the arrest of Mr. Spencer, for the search of his car, or for the filing of charges against him. Id. ¶¶ 109, 117.

The South Carolina complaint alleged that the defendants were liable for civil conspiracy, false arrest and imprisonment, malicious prosecution, abuse of process, assault and battery, wrongful discharge, conversion, intentional infliction of emotional distress, tortious interference with contract, libel, slander, infringement upon the plaintiffs' civil rights in violation of 42 U.S.C. § 1983, and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. SC Compl. ¶¶ 127-222. Once the South Carolina proceedings had reached the discovery stage, the plaintiffs indicated that they had retained an expert who would

opine that three police videotapes depicting the August 6, 2000 arrest of Mr. Spencer had been "altered or edited."  Southern Holdings v. Horry County, Civil Action No. 02-1859, Horry County's Supplemental Motion to Exclude Plaintiffs' Videotape Expert at 2 (D.S.C. July 14, 2005).  In response, the defendants informed the plaintiffs that an FBI expert, Noel Herold, would testify that the tapes had *not* been altered.  See Southern Holdings v. Horry County, Civil Action No. 02-1859, Horry County's Supplemental Motion to Exclude Plaintiffs' Videotape Expert at 2 (D.S.C. July 14, 2005).

The plaintiffs protested the proffer of Mr. Herold as an expert on numerous grounds, arguing that (1) the FBI had refused to produce "documentation . . . concerning the FBI protocols, procedures, standards and manuals pertaining to the examination of videotapes"; (2) the FBI had not provided unredacted versions of Mr. Herold's "working papers"; (3) "the FBI refused to identify and in fact concealed the name of at least one other party involved in the examination of the three police videotapes"; (4) the CV provided for Mr. Herold did not contain sufficient detail regarding prior legal testimony; and (5) the defendants had "failed to provide legitimate and standard third party documentation showing a chain of custody" for the videotapes "to allow the Plaintiffs to review the processes' integrity."  Southern Holdings v. Horry County, Civil Action No. 02-1859, Plaintiffs' Motion to Strike Noel Herold As an Expert Witness, at 2-3 (D.S.C. Mar. 26, 2007).  Before the court ruled on that motion, the case progressed to trial, and a jury was selected on May 8, 2007.  The jury had not yet been sworn, however, when plaintiffs' counsel informed the court that the parties had settled the case, and the complaint was dismissed with prejudice.  See Southern Holdings v. Horry County, Civil Action No. 02-1859, Minute

Entry (D.S.C. May 9, 2007); <u>id</u>., Order at 1 (D.S.C. Aug. 13, 2008) (summarizing the steps leading to the dismissal of plaintiffs' complaint).

After the dismissal of their complaint, the plaintiffs, at that point proceeding *pro se*, made numerous attempts to persuade the court to reopen the case.   <u>See</u> <u>Southern Holdings v. Horry County</u>, Civil Action No. 02-1859, Order at 2-3 (D.S.C. Aug. 13, 2008) (summarizing the plaintiffs' attempts to "rescind the settlement agreement and vacate the May 9, 2007 Order dismissing the case with prejudice").   Among other things, the plaintiffs argued that their complaint should be reinstated because of "alleged fraud and concealment of evidence by the Defendants and their lawyers."   <u>Id</u>. at 3.   The plaintiffs claimed that after the settlement of their case, they had discovered new evidence so important as to justify rescission of their settlement agreement.   <u>See id</u>.   This evidence included (1) a published article by Mr. Herold; (2) a copy of Mr. Herold's resume that had been submitted in an unrelated civil case; (3) FBI procedural manuals; and (4) plaintiffs' interviews of three FBI employees, which supposedly "refuted key issues concerning FBI evidentiary and examination procedures," "confirmed that Herold's laboratory worksheet used during his analysis of the [police] videotape was missing key information," and "establishe[d] Herold's perjury during his deposition."   <u>Id</u>. at 3-4.

The district court rejected the plaintiffs' arguments that they were entitled to rescission of the settlement agreement, finding that all of the evidence identified by the plaintiffs was "merely impeaching or cumulative evidence or evidence that could have been discovered through the exercise of due diligence" in a more timely manner.   <u>Southern Holdings v. Horry County</u>, Civil Action No. 02-1859, Order at 4-5 (D.S.C. Aug. 13, 2008).   The court also noted that it was "unable to say what effect the 'newly discovered evidence' would have had if the case

were tried because the case settled." Id. at 5.  Because the plaintiffs had failed to make the

showing necessary for the reopening of their case, and because their arguments had been

untimely, the court denied their motion to vacate the order dismissing the complaint.  See id. at 9.

On appeal, the district court's decision was affirmed by the Fourth Circuit.  See Lail v. Horry

County, 363 Fed. Appx. 223, 226 (4th Cir. Jan 22, 2010).

### B.  Allegations of the Second Amended Complaint

In addition to the seven plaintiffs who participated in the South Carolina

litigation, the second amended complaint currently before this Court names as plaintiffs Bruce

Benson, Dan Green, and Virginia Williamson.  See 2d Am. Compl. ¶¶ 1, 2, 10.   Roughly thirty

paragraphs of the complaint, which contains 329 paragraphs and spans 131 pages, recount largely

the same allegations that were made in the South Carolina litigation: the alleged effort to take

control of Southern Holdings, the alleged harassment of various plaintiffs connected to Southern

Holdings, the allegedly unlawful arrest of Mr. Spencer on August 6, 2000.  See id. ¶¶ 57-89.

Numerous additional paragraphs allege that various law enforcement agencies and employees at

the state and federal levels conspired to hide evidence of the civil rights violations at issue in the

South Carolina lawsuit.  See id. ¶¶ 90-144.  Specifically, according to the second amended

complaint, defendant John Weaver, in his capacity as counsel for Horry County, South Carolina,

"wrongly hid public documents that evidence the civil rights violations," and defendant John

Morgan, chief of the Horry County Police, "assisted and/or directed the hiding and/or destruction

of incriminating evidence."  Id. ¶¶ 90-91.

The plaintiffs further allege that the FBI assisted Horry County officials in covering up evidence of the claimed civil rights violations because the FBI wanted to avoid "public awareness of the ease of civilian access to commit criminal acts using the FBI-NCIC system." 2d Am. Compl. ¶ 92.  This claim is presumably a reference to plaintiffs' allegation that either two former corporate officers of Southern Holdings, see SC Compl. ¶ 43, or an assistant district attorney in North Carolina, see 2d Am. Compl. ¶ 70, engineered the inclusion of James Spencer's name and a warrant for his arrest in the National Criminal Information Center database.  The FBI would want to conceal such "civilian" tampering with the database, the plaintiffs say, because "[t]he FBI is actively looking to expand its databases on United States Citizens and seeking large amounts of funding from Congress for such expansion.  Publicity of misuse of such databases would be counterproductive to the FBI's agenda for expansion."  Id. ¶ 92.

Not only the FBI, but also the South Carolina Law Enforcement Division ("SLED") is alleged to have participated in a cover-up of the civil rights violations alleged by the plaintiffs.  See 2d Am. Compl. ¶ 93.  SLED's "motivation" for assisting in such a cover- up was allegedly "financial . . . in that the South Carolina Insurance Reserve Fund was the South Carolina state agency that would have been financially responsible for the damages associated with civil rights violations."  Id.  In furtherance of this claimed cover-up, the plaintiffs say, the FBI refused to investigate the matter when plaintiff Nicholas Williamson reported to defendant Phil Celestini, a special agent with the FBI, "the criminal misuse of the FBI-NCIC to facilitate the civil rights violations . . . and the extortion of Plaintiff James Spencer and the civil rights violations under color of law suffered by [Nicholas] Williamson and [co-plaintiff] Virginia

Williamson." Id. ¶ 94.  The FBI continued not to investigate plaintiffs' claims even after various plaintiffs complained about the alleged civil rights violations to the FBI on multiple occasions. See id. ¶¶ 99, 103-06, 135-36, 138.  Furthermore, plaintiffs allege, one FBI special agent shared evidence given to him by the plaintiffs, including police videotapes of Mr. Spencer's August 2000 arrest, with SLED.  Id. ¶ 106.

Plaintiffs further allege that during the South Carolina litigation, "[t]he FBI intentionally falsified 'certified' NCIC reports," removing "the incriminating inquiries that evidenced civil rights crimes . . . by the local law enforcement officers."  2d Am. Compl. ¶ 117. "These fabricated FBI 'certified' reports were submitted by FBI personnel in Washington to United States Senator Lindsey Graham, thus committing fraud on an unwitting United States Senator."  Id. ¶ 118.  According to the plaintiffs, the FBI also "joined in a conspiracy . . . to cover-up the illegal editing of the police videotapes" during the South Carolina litigation.  Id. ¶ 121.  The FBI allegedly effected the cover-up in question by "fabricat[ing]" the CV of Noel Herold and the "SLED Chain of Custody concerning the suspect police videotapes."  Id. ¶ 124.

After making the allegations concerning the South Carolina litigation that are described above, the focus of the second amended complaint shifts abruptly.  According to the plaintiffs, in the first half of 2009, Mr. Spencer and his elderly mother, plaintiff Doris Holt, began filing administrative claims against the defendants under the Federal Tort Claims Act and its counterpart in South Carolina statutory law.  See 2d Am. Compl. ¶ 145.  According to the second amended complaint, employees of the state of South Carolina reacted to the filing of those claims by arranging for Ms. Holt to be removed from her home and placed in protective custody.  See id. ¶ 152.  More specifically, plaintiffs claim that defendant Susan Stroman, an

10

employee of the South Carolina Department of Social Services ("DSS"), filed a complaint in family court in which she made "contrived and baseless claims" that Mr. Spencer had abused his mother and threatened Ms. Stroman with guns. Id. ¶¶ 154-158. Based on that complaint, the family court issued an order removing Ms. Holt from Mr. Spencer's custody and placing her in the care of the state of South Carolina on July 29, 2009. Id. ¶ 158. When Mr. Spencer subsequently spoke to Ms. Stroman, she told him that she had "photographic evidence showing where [he] had beat[en] his mother in the face." Id. ¶ 164. These photos, however, according to plaintiffs, were "fabricate[d]" by Ms. Stroman and an employee of defendant Palmetto Senior Care, the eldercare facility where Ms. Holt spent her days. Id. ¶ 161. Ms. Stroman and the Palmetto employee, defendant Jennifer Brewton, placed "makeup on 92-year-old Doris Holt" to create the look of "facial injuries" and "then took photographs." Id.

A South Carolina family court held several hearings regarding Ms. Holt's case in the summer and fall of 2009. See 2d Am. Compl. ¶¶ 170, 186, 189. Although "it was put on the Court record" at a hearing held on September 5, 2009, that Mr. Spencer "had not physically abused his mother," the family court still refused to release Ms. Holt from protective custody and has not reinstated Mr. Spencer's authority to exercise power of attorney on his mother's behalf. Id. ¶¶ 187-90. Ms. Holt allegedly remains "at UniHealth acute care facility[,] where she was placed by DSS," and where, according to the second amended complaint, she "was denied her care benefits under her comprehensive policy with Palmetto Senior Care . . . and suffered cruel and unwarranted treatment." Id. ¶ 194.

Based on the allegations summarized above, the plaintiffs contend that they are entitled to relief under the Federal Tort Claims Act ("FTCA"), Bivens v. Six Unknown Named

11

Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971), 42 U.S.C. § 1983, the Racketeer

Influenced and Corrupt Organizations Act, the South Carolina Tort Claims Act, and South

Carolina common law.  See 2d Am. Compl. ¶¶ 218-305.  They claim damages as follows: James

Spencer, $80 million, id. ¶¶ 312-13; Rodney Lail, $12 million, id. ¶ 316; Irene Santacroce, $15

million, id. ¶ 322; Ricky Stephens, $7 million, id. ¶ 323; Marguerite Stephens, $2 million, id.

¶ 324; Doris Holt, $35 million, id. ¶ 325; Nicholas Williamson, $25 million, id. ¶ 326; Virginia

Williamson, $10 million, id. ¶ 327; Bruce Benson, $20 million, id. ¶ 328; and Dan Green, $25

million. Id. ¶ 329.

### C.  Miscellaneous Matters

On February 22, 2011, Mr. Spencer, who apparently has filed all documents

submitted on behalf of the plaintiffs in this matter, filed a document entitled "Emergency Motion

for Court Orders to Perform Autopsy and Preserve Records."  See Docket No. 86.  In that motion

he represented that his mother, plaintiff Doris Holt, had passed away on February 19, 2011,

"while in the custody of Defendant South Carolina Department of Social Services."  Id. at 1.  He

asserted that her death "was due to dehydration and starvation while being held captive against

her will at the facility of Defendant UniHealth in Orangeburg, South Carolina," id., and requested

that the Court order, among other things, that a "complete autopsy" be "performed at the Medical

University of South Carolina in Charleston, South Carolina due to the suspicious nature of the

death."  Id. at 5.  Because this Court was not convinced that it had jurisdiction to enter such an

order, it denied Mr. Spencer's motion on February 24, 2011.

On March 22, 2011, the plaintiffs moved for leave to file a third amended complaint. Although the plaintiffs have failed to enumerate in their motion the specific differences between the proposed third amended complaint, which is 121 pages long, and the operative second amended complaint, which is 131 pages long, they state that the differences consist of the "delet[ion of] the Rackeeteer Influenced and Corruption [*sic*] Organizations Act . . . cause of action against the Defendants and [the] adjust[ment of] the complaint to reflect the death of Plaintiff Doris Holt." Mot. for 3d Am. Compl. at 7.

## II.  MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT

The Court will "freely give leave [to amend a complaint] when justice so requires," FED. R. CIV. P. 15(a)(2), and "[i]t is common ground that Rule 15 embodies a generally favorable policy toward amendments." Howard v. Gutierrez, 237 F.R.D. 310, 312 (D.D.C. 2006) (quoting Davis v. Liberty Mutual Insurace Co., 871 F.2d 1134, 1136-37 (D.C. Cir. 1989)). Where amendment would be futile, however, the Court may in its discretion deny such a motion. See Vreven v. AARP, 604 F. Supp. 2d 9, 13 (D.D.C. 2009) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). The third amended complaint that the plaintiffs propose to file differs only slightly from the operative second amended complaint and remedies none of the deficiencies identified by the Court in the remainder of this Opinion. As a result, the Court will deny as futile the plaintiffs' motion for leave to amend their complaint a third time.

## III.  FEDERAL DEFENDANTS' MOTION TO DISMISS

The various defendants who are employees or agencies of the United States government — the United States, the FBI, and the numerous FBI officials and special agents who

are alleged to have manufactured or altered evidence related to the South Carolina litigation or to have refused to investigate plaintiffs' civil rights claims — have moved to dismiss the claims against them pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. See Fed. MTD at 5-6.  Because the Court concludes that plaintiffs have failed to state a claim for relief against any of the federal defendants, the motion to dismiss all claims against those defendants will be granted.

### A.  Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Erickson v. Pardus, 551 U.S. 89 (2007).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, Bell Atlantic Corp. v. Twombly, 550 U.S. at 555, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint."  Erickson v. Pardus, 551 U.S. at 94; see also Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.  The complaint "is construed liberally in the [plaintiff's] favor, and [the Court should] grant [the plaintiff] the benefit of all inferences that can

be derived from the facts alleged." <u>Kowal v. MCI Commc'ns Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. <u>See</u> <u>Kowal v. MCI Communications Corp.</u>, 16 F.3d at 1276; <u>Browning v. Clinton</u>, 292 F.3d 235, 242 (D.C. Cir. 2002).

The Court generally may not rely on facts "outside" the complaint in deciding a motion for dismissal pursuant to Rule 12(b)(6), but it may consider, among other things, "matters of public record." 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. 2004). To provide context for the *pro se* plaintiffs' claims, the Court has reviewed the record of the South Carolina litigation, to the extent that it is publicly available.

### B. Damages and Constitutional Claims

Plaintiffs assert that the various federal defendants are liable for (1) violations of the Federal Tort Claims Act ("FTCA"), 2d Am. Compl. ¶ 220; (2) constitutional violations, pursuant to <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), 2d Am. Compl. ¶ 250; (3) 42 U.S.C. §§ 1983, 1981, & 1985, <u>id</u>. ¶¶ 257-258; (4) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), <u>id</u>. ¶ 262; (5) intentional infliction of emotional distress, <u>id</u>. ¶¶ 277-280; and (6) civil conspiracy. <u>Id</u>. ¶ 283. The complaint fails to state a claim for relief against the federal defendants on any of those grounds.

Certain flaws inherent in plaintiffs' second amended complaint are fatal to multiple theories of the federal defendants' liability. First, the Court notes that while the complaint alleges a wide array of facts concerning events allegedly occurring over roughly a ten-year period, the alleged actions that may be plausibly attributed to any of the federal defendants

are relatively few.  Because the plaintiffs' factual allegations fail to permit any reasonable

inference that any federal defendant was connected either to the civil rights violations alleged in

the South Carolina litigation or the placement of Doris Holt in state custody, those occurrences

may not serve as the basis for any claims against the federal defendants.  Cf. 2d Am. Compl.

¶ 260 (suggesting that FBI employees "cause[d] the constitutionally impermissible, retaliatory

removal of Plaintiff Doris Holt from her home).

   Second, the plaintiffs have failed to state a plausible claim that they were injured

by the actions of the federal defendants that are alleged in the second amended complaint.  In

general terms, the actions alleged in the complaint to which a federal defendant may possibly be

linked are those claiming that (1) the FBI refused to investigate the plaintiffs' civil rights

complaints, see 2d Am. Compl. ¶¶ 99, 103-06, 135-36, 138; (2) one or more FBI employees tried

to conceal the fact that police videotapes to be used as evidence during the South Carolina

litigation had been altered, id. ¶ 121; (3) one or more FBI employees falsified documents related

to the NCIC and/or the background of Noel Herold, id. ¶¶ 117, 124; and (4) FBI employees

refused to provide various agency manuals on internal procedure to the plaintiffs.  Id. ¶ 235.  The

plaintiffs do not make any specific factual allegations concerning injuries allegedly attributable to

those acts.  Where the plaintiffs do allege specific injuries, those injuries bear no plausible

connection to the alleged actions of the *federal* defendants.  See, e.g., id. ¶ 316 ("As a result of

Defendants['] negligent and/or malicious conduct, Plaintiff Rodney Lail has a claim for back pay,

lost wages, and benefits dating back to his termination from the Myrtle Beach Police Department

on November 1, 2000."); id. ¶ 315 ("As a result of Defendants['] negligent and/or malicious

conduct, Plaintiff Spencer has chronic PTSD and serious depression and lives in fear for his

life.").  Plaintiffs' other allegations of injury are purely conclusory, in some cases merely

parroting statutory language.  See, e.g., id. ¶ 242 (federal defendants "caused personal injury to

one or more Plaintiffs"); id. ¶ 262 ("Defendants are two or more persons or entities that have

conspired and formed one or more interacting entrprises, through a pattern of racketeering

activity — causing injury to business or property of Plaintiffs" (echoing the language of

18 U.S.C. § 1964, which provides a private right of action for persons "injured in [their] business

or property" by certain activities)).

        The manner in which the alleged actions of the federal defendants might have

injured any of the plaintiffs is in no way evident from the second amended complaint.  Plaintiffs

identify no injury that would have been averted if the FBI had investigated their civil rights

claims.  They do not claim that the outcome of the South Carolina litigation would have been

different if not for the alleged actions of the federal defendants.  In the absence of any allegation

of any form of injury that might logically flow from the conduct complained of, purely

conclusory allegations of damages fail to rise to the level of plausibility.  See Ashcroft v. Iqbal,

129 S. Ct. at 1949 ("[t]hreadbare recitals of [one of] the elements of a cause of action" are not

sufficient to withstand a motion to dismiss).  Consequently, plaintiffs have failed to state a claim

for relief based on any theory of liability that is viable only if damages are properly pled; their

claims against the federal defendants based on the FTCA, RICO, and the South Carolina torts of

civil conspiracy and intentional infliction of emotional distress therefore must be dismissed.  See

28 U.S.C. § 1346(b) (waiving the sovereign immunity of the United States as to claims for

damages based on "injury or loss of property, or personal injury or death caused by the negligent

or wrongful act or omission of any employee of the Government while acting within the scope of

his office or employment"); 18 U.S.C. § 1964 (providing a cause of action under RICO for persons "injured in [their] business or property" by specified activities); <u>Argoe v. Three Rivers Behavioral Center</u>, 697 S.E.2d 551, 555 (S.C. 2010) (to prevail on a claim for intentional infliction of emotional distress, plaintiffs must show that they experienced "emotional distress [that] was 'severe' such that 'no reasonable man could be expected to endure it'"); <u>Hackworth v. Greywood at Hammett, LLC</u>, 682 S.E.2d 871, 874 (S.C. Ct. App. 2009) (tort of civil conspiracy includes as an element a requirement of "special damage").

Plaintiffs have also failed to state any claim predicated upon an alleged violation of their constitutional rights by any of the federal defendants.  The second amended complaint alleges that the federal defendants "deprive[d] Plaintiffs of the Constitutional rights of due process, and rights to equal protection of the law, in acts of obstruction of justice and commission of fraud upon the court, and deprived the Plaintiffs of the right to a jury trial under the 7th Amendment and other applicable Amendments of the United States Constitution including the 1st, 5th, and 14th Amendments."  2d Am. Compl. ¶ 253.  None of the actions alleged in the complaint and attributable to the federal defendants constituted a violation of any of the constitutional amendments identified by the plaintiffs.  For the same reason that the complaint fails to allege any injury caused to the plaintiffs by the federal defendants, it also fails to allege a deprivation of life, liberty, or property — an essential element of a due process claim. <u>See</u> <u>Zinermon v. Burch</u>, 494 U.S. 113, 125 (1990).  Furthermore, the plaintiffs were in no way deprived of a jury trial, in violation of the Seventh Amendment or otherwise; the record of the South Carolina litigation shows that the plaintiffs, who were represented by counsel, voluntarily waived that right by entering into a settlement agreement.  Finally, there is no apparent factual

foundation in the complaint for plaintiffs' claims that the federal defendants violated either their First Amendment rights or the Equal Protection Clause.  As a result, plaintiffs' claims against the federal defendants under Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971), and 42 U.S.C. §§ 1981, 1983, and 1985 will be dismissed, leaving no remaining valid claims against the federal defendants.[2]  Because the liability of non-federal defendant the Academy Group is predicated upon its employment of Noel Herold, a federal defendant, see 2d Am. Compl. ¶¶ 286-87, all claims against the Academy Group will also be dismissed.

## IV.  REMAINING DEFENDANTS' MOTIONS TO DISMISS

All remaining defendants — Kathy Beers, Jennifer Brewton, David Caldwell, Larry Gainey, Princess Hodges, Horry County, Mark Keel, John Morgan, Palmetto Health Care, Mike Prodon, the South Carolina Department of Social Services, the State of South Carolina, the State of South Carolina Law Enforcement Division, Susan Stroman, Suzanne Tillman, John Weaver, Brenda Hughes, Unihealth Post Acute Care of Columbia, Shawn Markham, Susan Stewart, Andrew Lindemann, Jay Saleeby,  E. Glenn Elliott, and Robert E. Lee (for ease of reference, "the nonresident defendants") —  contend that they are not subject to personal jurisdiction in the District of Columbia and therefore that the plaintiffs' claims against them

---

[2]     Of course, claims against federal employees may rarely, if ever, be brought under 42 U.S.C. § 1983, see Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1104 (D.C. Cir. 2005), and may not be brought against federal employees acting in their official capacity under Section 1981 or 1985.  See Roum v. Bush, 461 F. Supp. 2d 40, 46 (D.D.C. 2006).  Indeed, all of plaintiffs' legal theories are flawed in numerous fundamental ways.  In the interest of brevity, the Court has chosen to highlight only so many of those flaws as are sufficient to warrant dismissal of plaintiffs' claims.

should be dismissed under Rule 12(b)(2) of the Federal Rules of Civil Procedure.  It is the

plaintiffs' burden to make a *prima facie* showing that this Court has personal jurisdiction over a

defendant.  See First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1378-79 (D.C. Cir.

1988); Davis v. Grant Park Nursing Home LP, 639 F. Supp. 2d 60, 65 (D.D.C. 2009).

"Plaintiff[s] must allege specific facts on which personal jurisdiction can be based; [they] cannot

rely on conclusory allegations."  Moore v. Motz, 437 F. Supp. 2d 88, 91 (D.D.C. 2006) (citations

omitted).

   The plaintiffs' only effort to connect most of the nonresident defendants in any

way to the District of Columbia is their claim that those defendants were part of a vast conspiracy

encompassing the federal defendants, and that the federal defendants took actions in the District

of Columbia.  See SC Opp. at 9; Markham/Stewart Opp. at 2-8; Elliott Opp. at 3-5; Saleeby Opp.

at 4-5; Lee Opp. at 3-5; Lindemann Opp. at 6; Unihealth Opp. at 9-11.  As the Court already has

explained, however, the plaintiffs have stated no valid claims, for civil conspiracy or otherwise,

against the federal defendants, and their alleged actions therefore cannot serve as the basis for the

exercise of personal jurisdiction over the nonresident defendants, none of whom are claimed to

have taken *any* specific action in or directed toward the District of Columbia.

   With respect to the State of South Carolina, Palmetto Senior Care, and Unihealth,

the plaintiffs suggest that personal jurisdiction is proper in the District of Columbia because

those defendants receive funding from and are regulated by the federal government.  See SC

Opp. at 12; Unihealth Opp. at 9-11.  This argument fails because, under the "government

contacts" doctrine, "'a defendant's relationships with federal agencies do not enter the calculus of

minimum contacts with the District of Columbia for jurisdictional purposes.'"  Ficken v. Rice,

594 F. Supp. 2d 71, 75 (D.D.C. 2009) (quoting Chrysler Corp. v. General Motors Corp., 589 F.

Supp. 1182, 1196 (D.D.C. 1984)); see Bechtel & Cole v. Graceland Broadcasting, Inc., 18 F.3d

953 (table), 1994 WL 85047, at *1-2 (D.C. Cir. 1994) ("The government contacts doctrine bars

courts in the District of Columbia from exercising personal jurisdiction based solely on the

defendant's contacts with a federal instrumentality."); Jung v. Ass'n of Am. Med. Colleges, 300

F. Supp. 2d 119, 139 (D.D.C. 2004) ("'The District of Columbia's unique character as the home

of the federal government requires this exception in order to maintain unobstructed access to the

instrumentalities of the federal government.'" (citation omitted)).  The plaintiffs therefore have

failed to establish that any nonresident defendant is subject to the exercise of personal

jurisdiction by this Court.  As a result, all claims against those defendants must be dismissed.


## V.  REMAINING MATTERS

For the reasons outlined above, all claims against the defendants specifically

named in the plaintiffs' second amended complaint will be dismissed, leaving as defendants in

this case only "[u]nknown John Does."  2d Am. Compl. ¶ 51.  The record does not reflect that

any individual initially identified as a John Doe has been served with process.  On June 21, 2010,

the Court ordered the plaintiffs to effect service on all defendants by July 2, 2010, or to show

cause in writing why claims against defendants who had not been served should not be

dismissed.  The plaintiffs responded by filing a motion to proceed in forma pauperis so that they

could request that the United States Marshals Service effect service on their behalf.  See IFP

Mot. at 3-4.  Then, in July 2010, the plaintiffs filed numerous affidavits attesting that service had

been made on the named defendants.  They made no attempt to describe any efforts to identify

the individuals named as "John Does" or to propose a plan for identifying them.  Consequently,

the Court finds that the plaintiffs have not shown good cause for their failure to serve the John

Doe defendants, and those defendants will be dismissed pursuant Rule 4(m) of the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 4(m).

As for the plaintiffs' motion for leave to proceed *in forma pauperis*, the Court finds that the plaintiffs have failed to demonstrate that they qualify for such relief.  According to plaintiffs' own affidavits, one plaintiff, Nicholas Williamson, is a tenured professor at the University of North Carolina at Greensboro who earns a salary of $116,602 per year and owns two houses.  See Williamson Affid. (attached to IFP Mot. as unnumbered exhibit).  The Court is unconvinced that, as a group, the plaintiffs are unable to pay filing fees, and notes further that the plaintiffs did in fact pay the required fee upon filing the complaint in this case.  Because the plaintiffs do not qualify to proceed *in forma pauperis*, and because their claims are dismissed, their requests for use of the Marshals Service to serve process and for appointment of *pro bono* counsel will also be denied.

## VI.  CONCLUSION

For the foregoing reasons, all pending motions to dismiss the plaintiffs' second amended complaint will be granted, and the complaint will be dismissed.  The plaintiffs' motion to proceed *in forma pauperis* and for related relief will be denied, as will their motion for leave to file a third amended complaint.  Plaintiffs' motion for "firewall protection" will be denied as moot.  An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:   March 24, 2011